Minor and Cage et al. vs. Sheriff.

## No. 10,779.

### H. C. MINOR VS. OSCAR DASPIT, SHERIFF.

### H. CAGE ET AL. VS. OSCAR .DASPIT, SHERIFF.

#### ( CONSOLIDATED.)

|       |      |
| ----- | ---- |
| 43    | 337  |
| 45    | 1235 |
| 43    | 337  |
| 46    | 1302 |
| 46    | 1566 |
| 43    | 337  |
| 104   | 292  |

1. Former decisions as to the constitutionality of Levee District acts affirmed.
2. The legislative judgment defining the persons and property which are bene-fited by a proposed public improvement, and which shall pay the contributions exacted therefor, can not be judicially overruled without conclusive showing that, either by mistake or intention, it has imposed a contribution unsupported by any possible benefit, or out of all proportion to the possible benefit.
3. It does not avail to show that particular persons or property are less benefited than others; it is impossible to make a distribution of contributions in propor-tion to benefits.
4. The evidence in this case does not establish that plaintiffs' property derives no benefit from the levee system.

APPEAL from the Nineteenth District Court, Parish of Terrebonne. *Allen, J.*

*L. F. Suthon; W. S. Benedict* and *H. C. Cage* for Plaintiffs and Appellants:

1. The 10-mill tax proviced for in Article 214 of the Constitution of 1879, is in itself a local assessment.
2. Without Article 214 the power of the Legislature to enact Act 97 of 1890 would have been ample.
3. As Article 214 is entirely unnecessary, as an enabling provision, its sole object was to restrict the power of local assessment, which without it was practically unlimited.
4. Article 214 providing the method in which local assessments can be made for levee purposes, the taxes in excess of the 10 mills are unconstitutional.
5. The lands of the Ranch plantation are not subject to overflow, and derive no benefit or advantage from levees.
6. Deriving no benefit or advantage from levees, they are not subject to local assessment for the purpose of building levees, and the exaction thereof is tak-ing private property for public purposes, forbidden by the law of local assess ment, the Constitution of the State of Louisiana and of the United States.

*O. O. Provosty* for Defendant and Appellee. ˋ

The opinion of the court was delivered by

FENNER, J. These cases are injunction proceedings to restrain the sheriff from enforcing or collecting ·certain taxes, assessments·

22

and forced contributions levied on the property of plaintiffs by the Board of Commissioners of the Atchafalaya Basin Levee District under the authority of Act No. 97, of the General Assembly of 1890.

It is not pretended that the commissioners have not proceeded in full conformity with the powers conferred upon them by the legislative act above mentioned; or the sheriff is, in any manner, departing from the line of his duty as defined by said act.

The grounds of injunction are charges assailing the constitutionality of the act and the validity of taxes and the contributions exacted thereunder.

There must be an end to judicial discussion, even of constitutional questions. We have recently had occasion, in a very elaborate opinion, to discuss and dispose of all the constitutional objections now urged against this very act. Munson vs. Board of Commisioners. Ante page ——.

We had previously rendered several decisions to the same effect in regard to similar acts. Planting Co. vs. Tax Collector, 39 An. 456; Charnock vs. Levee Co. 38 An. 325; Board vs. Lorio Bros., 33 An. 276.

Nothing has been said to shake our firm conviction of the correctness of those decisions; and we content ourselves with referring to them as fully answering all the objections to the constitutionality of this legislation.

There is, however, one ground for the injunction in one of the cases which is new and requires consideration. This is the following, viz: That the particular land of the plaintiff is subject to overflow, and is not protected by the levees built or proposed to be built; that it requires no such protection and can derive no possible benefit or advantage from the levees, and that, therefore, the assessments are a taking of private property for public purposes without compensation.

We have, theretofore, adverted to this subject and have laid down the following general principles, viz:

" For validity of such assessments three elements must concur:

1. The work must be public and of a character to confer special local benefits on the district within which the assessment is levied.

2. The assessment must be supported by benefits actually or presumptively received by the persons or property subjected to it.

3. The contribution must not manifestly exceed the benefit conferred.

Where these elements, or any of them, are clearly wanting in contributions exacted under the name of a local or special assessment, the legislative action can not be sustained. But the province of determining for what objects, in what districts, and on what persons or property such assessments may be levied, is wisely, and indeed necessarily confided to the legislative department, and it is only where the assessment is so manifestly unjust, oppressive and violative of the foregoing requirements as to give demonstration that they have been disregarded, that a court would be justified in overruling the legislative judgment. Indeed, Cooley says: "It is conceded that the legislative judgment, that a certain district is or will be so far specically benefited by an improvement as to justify a special assessment, is conclusive, and that its determination as to what shall be the basis of the assessment is equally conclusive. To invoke the intervention of a court for relief against the results of its conclusion is to give its judgment controlling effect over that of the Legislature in a matter of the apportionment of a tax, which, by concession on all sides, is purely a matter of legislation. This is clearly inadmissible in any case where the legislative power has not been exceeded by an apportionment merely colorable." Cooley on Taxation, p. 459. Planting Company vs. Collector, 39 An. 456.

Plaintiffs, in their brief, quote a more moderate statement of the rule by Mr. Burroughs, who says:

"Equality is the rule, and while the Legislature have a large discretion on this subject and it may be difficult to define the limit beyond which they may not pass, *yet when it is plain as to a particular individual that he receives no benefit from the local assessment, then as to him the assessment is not a tax—it is a taking of private property for public use without just compensation and the assessment is void. Taxing under the taxing power gives no validity to the act; it is not the name, but the substance of the transaction that makes the difference between legal taxation and confiscation.*" Burroughs on Taxation, p. 464.

There is really no difference in substance between the rule as expressed by Mr. Burroughs and as expressed by Mr. Codley and by this court. No one contends that the legislative judgment possesses any such conclusiveness as to validate any assessment based on no possible benefit or out of all proportion to the possible benefit.

The meaning of the rule simply is that the legislative judgment can not be disregarded unless it be demonstrated that, by mistake or intention, it has exacted a contribution unsupported by any possible benefit, or out of all proportion to such possible benefit.

The Legislature, in this case, has defined the limits of this levee district; has decided that the whole district requires levee protection and will be protected by it; and has specified the property within its limits which shall be subject to the contributions assessed, including the property of plaintiff and all like property within the district.

The plaintiff alleges that he and his property must be exempted from these contributions because they can derive no possible benefit from them.

He carries the burden of clearly proving the allegation and has assumed that task.

The proof administered certainly shows that plaintiff's plantation has not been overflowed by Mississippi river water within the memory of the witnesses who testified running back more than half a century.

Nevertheless, the fact remains that his land is alluvial, formed by the deposit of sediment from the water of the Mississippi river; and the ridge, which he claims now protects him, is also alluvial. Whence it follows that both must, at one time and repeatedly, have been overflowed by the Mississippi river.

No reason is shown why, if the same conditions should concur, they should not be again overflowed. The changed conditions which have saved his land from overflow during the period covered by the testimony are possibly, and even probably, attributable to levee construction which has prevailed throughout the parish. The fact that numerous breaks in the levees, which have occurred from time to time, did not subject him to overflow, by no means proves that, if the levees were entirely abandoned and swept away, he would not be overflowed. Mr. Perilliat, the only scientific expert examined, testifies as follows: "To my mind the amount of territory overflowed depends, *first*, on the height of the flood line, and *second*, on the ratio between the outlet and inlet. With many levees down, the depth of overflow in any given area will certainly be greater than with few levees down. In this alluvial country the outlet is practically a constant quantity, that is, it remains unchanged at all times. The inlet is a variable quantity, and depends on the number of levees

down. This country is reported and considered as alluvial, or, as everyone knows, having been formed by deposit from the Mississippi river. Therefore, any alluvial land must, at one time, have been overflowed. It probably ceased to be overflowed because levees were erected and the inlet thereby decreased. But I believe that, in all cases, conditions could be imagined which would bring, as a consequence, the overflow of all lands of alluvial formation. * * I believe that there could be enough breaks on the river proper, together with a break on the Lafourche at the head of these ridges, to completely submerge these ridges."

This evidence, which seems plausible and rational, certainly indicates that plaintiff derives direct benefit from the levee system as a means of protecting his lands from overflow.

But even aside from the danger of actual inundation, there are other obvious benefits which he derives from the levee system. His lands are situated in a region subject to overflow and hardly fit for habitation without protection by levees. If the lands surrounding him are abandoned, or their value be annihilated, the value of his own must necessarily be decreased. The overflow, if it does not actually cover his land, reaches near it, interfering with his communication, transportation to market and elsewhere, and inflicting numberless inconveniences.

It may be that plaintiff stands in less necessity of levee protection than his neighbors and receives less benefit therefrom. But that can not affect the case. It was not practicable or possible for the Legislature to ascertain exactly how much benefit each taxpayer and property owner would derive from the contemplated improvement and to make a corresponding assessment. It was bound to deal with the subject *in globo*. Kelly vs. Pittsburgh, 104 U. S. 82.

The judge *a quo*, who heard the evidence, and who lives in the district, announces his conclusion on this point as follows: "From the testimony in the record, including the map, the court feels convinced that the lands of plaintiffs are protected and benefited by the system of levees erected and maintained by the Atchafalya Basin Levee Board." In this we concur.

Judgments affirmed.