Statement of the Case.
MONROE, C. J.
Plaintiff sues for specific performance (or, in the alternative, for damages for nonperformance) of a contract, whereby, as it is alleged, the two defendant banks agreed to buy, at par, $20,000 of its bonds. The contract is admitted, and it is not disputed that the constitutional and statutory requirements for the issuance of bonds, if the case be one in which debt may be incurred and bonds issued by a municipal corporation, have been observed, but the defense relied on, and which was sustained by the district court, is that this is not such a case; that the declared purpose of the plaintiff, as embodied in the proposition submitted to its property taxpayers, qualified to vote, and carried by a majority in number and property value, was, and is, to incur debt, issue bonds therefor, and provide for their payment by the levy of a tax, upon ,the property within its corporate limits, for the construction and maintenance of public roads and bridges within the limits of the parish of Lafayette, but outside the said corporate limits of the plaintiff city, and that taxation for such purposes is unauthorized by the Constitution or laws of the state; which defense raises the sole issue presented for decision.
Opinion.
[1] Article 291 of the Constitution of 1898, as reconstructed by the amendment proposed by act 236 of 1912 and adopted at the general election in November of that year, provides that police juries may, of their own motion, “form their respective parishes into road districts,” and, for the construction and maintenance of the public roads and bridges of their parishes, may set aside one mill of the taxes levied by them, impose a per capita tax (upon persons living outside of municipalities which maintain their own streets), and levy an annual license upon all vehicles using such roads; and that:
“Police juries and municipal corporations in the several parishes of this state may levy other taxes for the construction and maintenance of public roads and bridges within the territorial limits of said parishes, and may incur debt and issue negotiable bonds therefor, in the manner and to the extent authorized under the provisions of articles 232 and 281 of the Constitution and the statutes adopted to carry them into effect.” (Italics by the court.)
And there is a further provision for the levying by police juries of a tax, not to exceed 5 mills, for five years, for road and bridge purposes throughout air entire parish or in any ward, when authorized by vote of the property taxpayers whose property may be subjected to such tax. We turn, now, to' articles 232 and 281 in order to ascertain the meaning of the reference in the paragraph above quoted from article 291.
Article 232 limits the rate of state taxation to 6 mills (at one time reduced to 5 mills), but qualifies that limitation by the language “unless an additional tax is required under the terms of the artigles of this Constitution relating to the public debt.” And it then declares that:
“Except as otherwise provided in this Constitution, no parish, municipal or public board tax for all purposes whatsoever, shall exceed *95 in any one year ten mills on the dollar of assessed valuation [reduced to 8 mills, as to parishes and municipalities free of debt, by amendment proposed by Act No. 64, of 1906, and restored to 10 mills as the article now appears in the Constitution of 1913]: Provided, that for giving additional support to public schools, and for the purpose of erecting and constructing public buildings, public school houses, bridges, wharves, levees, sewerage work and other works of * * * public improvement, the title to which shall be in the public, any parish, municipal corporation, ward or school district may levy a special tax in excess of said limitation, whenever the rate of such increase and the number of years it is to be levied and the purpose for which the tax is intended, shall have been submitted to a vote •of the property taxpayers of such parish, municipality, ward or school district, entitled to vote under the laws of the state, and a majority •of the same in number, and in amount voting •at such election shall have voted therefor.”
The article contains no provision for the incurring of any debt or the issuance of any bonds; but the General Assembly, proceeding upon the assumption that such a course was authorized, passed act No. 84 of 1906, •entitled:
“An act to authorize parishes, municipal corporations, and parish boards of school directors, the parish of Orleans excepted, to issue bonds for certain public purposes to be secured by •special taxes voted therefor, and to provide for the manner of the issuance of the said bonds.” (Italics by the court.)
The first section of the act provides for the funding of the taxes authorized by article 232 of the Constitution, and there are other provisions which prescribe the manner in which the bonds are to be drawn and issued, impose certain specific duties upon •district attorneys and governing authorities with respect thereto, and practically limit the issuance of bonds to the prospective proceeds of the tax to be levied for their payment. But act No. 84 of 1906 has been held to be null and void, as in irreconcilable conflict with article 281 of the Constitution, which restricts and regulates municipal and other corporations in the matter of incurring debt and issuing bonds. Folse v. Police Jury, 128 La. 1089, 55 South. 681. Article 281 (as variously amended, as now appearing in the Constitution of 1913, and in so far as it is at all pertinent to the present inquiry) reads as follows:
“Section 1. Municipal corporations, parishes, * * * when authorized by a vote of * * * property taxpayers, * * * may, through their respective governing authorities, incur debts and issue negotiable bonds therefor, and each year while any bonds thus issued are outstanding, the governing authorities of such subdivisions shall impose and collect annually, in excess of all other taxes, a tax sufficient to pay the interest, annually or semiannually, and tfie principal falling due each year, or such amount as may be required for any sinking fund necessary to* retire said bonds at maturity; provided, that such special taxes, for all purposes as above set forth shall not in any year exceed ten mills on the dollar of assessed valuation of the property in such subdivisions.
“No bonds shall be issued for any other purpose than that stated in the submission of the proposition to the taxpayers, * * * or for a greater amount than therein mentioned; nor shall such bonds be issued for any other purpose than for constructing, improving and maintaining public roads and highways, paving and Improving streets, roads and alleys, purchasing and constructing systems of water works, sewerage, drainage, navigation, lights, public parks and buildings, together with all necessary equipment and furnishing, bridges and other works of public improvement, the title to which shall rest in the subdivision creating the debt, as the case may be; nor shall such bonds run for a longer period than 40 years from their date or bear a greater rate of interest than five per centum per annum, or be sold for less than par. The total issue of bonds by any subdivision for all purposes shall never exceed ten per centum of the assessed valuation of the property in such subdivisions. * * * ”
The amended article 291 is a later enactment upon the subject of the power of parishes and municipal corporations to levy taxes and issue bonds for the particular purpose of constructing and maintaining public roads and bridges than anything contained in either article 232 or 281, and must be held to amend, or supersede them, in so far as their provisions may be thought to conflict with the more recent enactment, as to the meaning of which there could arise no suggestion of doubt, Were it not for the reference which it contains to those articles.
[2] Conceding, however, that as to “man *97 ner” and “extent” the levy of the tax, the incurring of debt, and the issuance of bonds, under article 291, are to be regulated by the provisions of articles 232 and 281 and the statutes adopted to carry them into effect, that has no bearing upon the purpose of such issue, or upon the constitutional authority as related to such purpose; for, though it may readily be understood that there were reasons for adhering to an established “manner” of issuing such bonds, and to the limitations as to the “extent” of such an issue and of the tax levy in support thereof, which limitations are, in part, fixed by articles 232 and 281, and, in part, required to be fixed by the proposition submitted to, and approved by, the property taxpayers, it can hardly be imagined that the General Assembly would have put itself to the trouble of proposing, or that the people of the state would have put themselves to the trouble of voting upon and adopting, an amendment to the Constitution, merely to confer authority, already conferred, in order to accomplish a purpose, already provided for.
We are bound to assume that the purpose of the amendment to article 291 was to make a change of some kind; and, as the grant of authority to municipal corporations to levy taxes, incur debt, and issue bonds for the construction of roads and bridges within the parishes of which they are members but outside of their own corporate limits is made, by the amendment, in plain terms and was not previously to be found in the Constitution, we can conceive no reason why the change thus operated should not be held to have been the change intended. And, so, with regard to the police juries; they had not, prior to the adoption of the amendment in question, possessed the authority with respect to roads (which article 232 confers with respect to bridges) of levying a special tax, save in connection with the incurring of debt and the issuance of bonds, and that authority was conferred by the amendment.
The learned counsel for defendant refers to article 224 of the Constitution which provides that:
“The taxing power may be exercised by the General' Assembly for state purposes and by parishes and municipal corporations * * * under authority granted to them by the General Assembly, for * * * municipal, and local purposes, strictly public in their nature.”
And he argues that, under that article, a municipal corporation can impose taxes only for some local public purpose which is to be accomplished within the corporate limits; but, while it may be open to discussion whether an enterprise which has for its object the providing of a way of getting into or out of a town, or of bringing food, medicine,' and clothing in, and taking garbage out, may not be a local purpose, even within 'the meaning of article 224, the obvious answer to the argument is, that, for the purposes of the question at issue in this case, article 224 has been amended or superseded by article 291.
That it was competent for the people of the state to incorporate such an article in their fundamental law, there can be no doubt. In the absence of any constitutional inhibition, the General Assembly might itself have imposed a road and bridge tax upon all the property in the parish; or, as it has done, have required the police juries so to do; or, have required the police juries and the municipalities, respectively, so to do; or, as the Constitution itself has done, have authorized the municipalities, respectively, to tax themselves with the consent of their property taxpayers.
“The taxing power of the state,” says Judge Dillon, “consists in its authority to levy and collect taxes and assessments, which are in the nature of special taxes. Taxes (including in the term assessments) are burdens or charges imposed by the Legislature, or under its authority, upon persons and property, to raise money for public as distinguished from private purposes, or to accomplish some end or object public in its nature.” Dillon, Mun. Corp. (4th Ed.) vol. 2, p. 895, § 736.
“Whatever limitations exist upon the legisla *99 tive authority to wield, in its full scope, the taxing power of the state at its will, must be sought in the nature of the power itself, as thus briefly explained, and in express or implied restrictions of national or state Constitutions. Taxation implies, as we have seen, an imposition for a public use; and it also implies that the imposition shall be upon some system of apportionment, so as to secure uniformity among those who are, or ought to be, subject to the particular tax or assessment. * * * But, where the imposition is properly a tax, and no specific or express constitutional limitation exists, the power of the Legislature is supreme and without any theoretical bounds. ‘If the right to impose a tax exists,’ says the Supreme Court of the United States, ‘it is a right, which, in its nature, acknowledges no limit’; and the reason is that the needs of the public or of the government can ordinarily have no bounds set to them.” Id. p. 896, § 737.
“In the general power of the Legislature, as well as in its power to create municipal corporations, may be found the right to authorize them, when created, to impose or levy local rates, taxes, and assessments upon their inhabitants and upon all property within the limits of the designated taxing district, which is ordinarily co-extensive with the territorial limits of the municipality.” Id. p. 898, § 739.
“In the absence of special constitutional restriction, the Legislature may confer the taxing power upon municipalities in such measure as it deems expedient — in other words, with such limitations as it sees fit as to the rate of taxation, the public purposes for which it is authorized and the objects (the persons and property) which shall be subjected to taxation; but it cannot, of course, confer any greater power than the state itself possesses, and it must observe the restrictions and limitations of the organic law.” Id. p. 899, § 740.
The only restrictions upon state taxation which the learned author notes, as found in the federal Constitution, are contained in those provisions which prohibit legislation impairing the obligations of contracts, the laying of imposts or duties on imports or exports except such as are necessary for the execution of inspection laws, the levying of tonnage duties (and, by implication), the taxing of instrumentalities oif the federal government, and the levying of discriminating taxes against citizens of other states, and of taxes which impinge upon the power of Congress, to regulate interstate and foreign commerce. Id. pp. 901, 902, §§ 742, 743.
The same learned author, though expressing serious doubt as to the soundness of the doctrine that a municipal corporation can, by mere legislative authority, obligate itself by subscribing to the stock of a railway company and issuing negotiable bonds in payment of its subscription, and bind its inhabitants as to the validity of a tax levied ifor the payment of such bonds, concedes, nevertheless, that the doctrine is well established, and never, for a moment, questions that such authority may be conferred and such levy made valid by the Constitution of the state; or that legislative action would be sufficient to authorize the issuance of the bonds and levying of the taxes for a public purpose.
“Taxes,” he writes, “it is everywhere agreed, can only be imposed for public objects, and taxation to aid in building the roads of private railway companies, even if the use is a public use, is hardly consistent with our traditional respect for the inviolability of private property and individual rights.” Dillon, Mun. Corp. vol. 1, p, 230 (4th Ed.) § 157.
“Since the first edition of this work, the Supreme Court of the United States * * * have direetly sustained the validity of legislar tive acts authorizing municipal aid to railways. * * * This ends judicial discussion, if it does not terminate doubts. The Supreme Court, in reaching this result, places its judgment upon the ground that highways, turnpikes, canals, and railways, although owned by individuals under public grants or by private corporations, are publiei juris; that they have always been regarded as governmental affairs, and their establishment and maintenance recognized as among the most important duties of the state in order to facilitate transportation and easy communication among its different parts; and, hence, that the state may put forth, in favor of such improvements, both its power of eminent domain (as it constantly does) and its power to tax, unless there be some special restriction in the Constitution of the particular state. These powers may, in the judgment of the court, be lawfully exerted, because the use is in the nature of a public use, and these works are subject to public control and regulation (except so far as their right has been lawfully parted with by valid legislative contract), notwithstanding they may be exclusively owned by private persons or corporations.” Id. pp. 231, 232, § 158.
In the instant case, there is no question either of “mere legislative authority,” or of private interest involved, for the grant of *101 authority comes from the Constitution, and the roads and bridges to be constructed and maintained are the public roads and bridges of the parish, open, so far as we are advised, to the free use of the public and administered by the public authorities. Moreover, the levy of the tax in question was not compulsory, but was invited by the owners of the property upon which it is imposed, speaking through a majority, in number and value, at a special election held in accordance with the provisions of the Constitution. We entertain no doubt of the validity of the tax or of the bonds for the payment of which it is levied. The learned counsel- for plaintiff cites many authorities in their support, from among which we refer to the following, to wit: Sharpless v. Mayor, 21 Pa. 147, 59 Am. Dec. 778-780; Commissioners of Leavenworth County v. Miller, 7 Kan. 479, 12 Am. Rep. 425; City of Aurora v. West, 9 Ind. 74-82; Griffiths v. Commissioners of Crawford County, 20 Ohio, 1; Taylor v. Commissioners of Newburn, 55 N. C. 141, 64 Am. Dec. 566; Chicago, B. & Q. R. Co. v. Otoe County, 16 Wall. 667, 21 L. Ed. 381; 28 Cyc. 1671; 27 A. & E. Ene. of Law (2d Ed.) 631, verbo Taxation; Police Jury v. Succession of McDonough, 8 La. Ann. 341; City v. Graihle, 9 La. Ann. 561; Minor & Cage v. Sheriff, 43 La. Ann. 337, 9 South. 49; George v. Sheriff, 45 La. Ann. 1232, 14 South. 137; Hill v. Sheriff, 46 La. Ann. 1563, 16 South. 475; Clifton v. Hopgood (Marshal) 106 La. 535, 31 South. 46; Vicksburg, S. & P. R. Co. v. Tax Collector, 108 La. 442, 32 South. 404; 66 L. R. A. 314.
It is, therefore, adjudged and decreed that the judgment appealed from be avoided and annulled, and that there now be judgment for plaintiff and against the defendants, Bank of Lafayette and First National Bank of Lafayette, condemning them each to accept and pay for, at the par value of $10,000, twenty of the bonds, described in .the petition as “City of Lafayette Road' Improvement Bonds,” for $500 each, bearing the indorsement, “This bond secured by a tax. Registered on this 22d day of May, 1914,” signed by the secretary of state, with the great seal of the state of Louisiana attached.
' It is further decreed that defendants pay all costs.