(68 South. 742)

No. 21051.

STATE v. AMERICAN SUGAR REFINING CO.

(May 24, 1915.)

*(Syllabus by the Court.)*

1. CONSTITUTIONAL LAW ⊜⇒2—PROCEEDINGS TO FRAME NEW CONSTITUTION—RIGHT TO ORIGINATE.

The Constitution of 1898 being silent on the subject-matter of a convention for the purpose of framing a new Constitution, the power to originate proceedings for that purpose rested with the Legislature of the state, as the department most nearly representing the people.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 1; Dec. Dig. ⊜⇒2.]

2. CONSTITUTIONAL LAW ⊜⇒2 — CONSTITUTIONAL CONVENTION — EXTRA SESSION — PROCLAMATION.

When the Governor in August, 1913, issued his proclamation for an extra session of the Legislature, he had no power to limit the call for a convention to one subject, if such was his intention as argued by the defendant.

[Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 1; Dec. Dig. ⊜⇒2.]

3. DISTRICT AND PROSECUTING ATTORNEYS. ⊜⇒8, 9—AUTHORITY OF DISTRICT ATTORNEY —SUIT TO OUST CORPORATION — CONSTITUTIONAL LAW.

The proposal in the form of Act 1 of said Extra Session, having been approved and ratified by the people, constituted a mandate to the convention about to be convened, containing a number of restrictions.

*Held*, that article 190 of the Constitution of 1913, if applicable to the district attorney for the parish of Orleans, enlarged the duties of that official in violation of the prohibition against changing the provisions of existing laws, "touching, relating to, or in any manner affecting * * * the term of office, duties or compensation of any existing officer" and is therefore, in that particular, null and void.

*Held* that, as under the law then existing the district attorney of the parish of Orleans had no authority to represent the state except in criminal cases, and as his duties have not been enlarged so as to include civil cases, he has no capacity to represent the state in this litigation.

[Ed. Note.—For other cases, see District and Prosecuting Attorneys, Cent. Dig. §§ 34–37; Dec. Dig. ⊜⇒8, 9.]

O'Niell, J., dissenting.

Appeal from Civil District Court, Parish of Orleans; E. K. Skinner, Judge.

Action by the State against the American Sugar Refining Company. From a judgment of dismissal, plaintiff appeals. Amended and affirmed.

Chandler C. Luzenberg, Dist. Atty., and Donelson Caffery, special counsel, both of New Orleans, for the State. Joseph W. Carroll, George Denegre, and Hugh C. Cage, all of New Orleans (James M. Beck, of New York City, of counsel), for appellee. W. O. Hart, of New Orleans, in opposition to the position of the appellee.

LAND, J. The original petition of the plaintiff covers 58 printed pages; but, for

the purpose of the decision of the issues presented by this appeal, it suffices to state that this is a suit to cancel the license of the defendant corporation to do business in this state, and to oust it from the state, and to enjoin it from doing any business therein, because of its alleged long and persistent violation of the anti-trust and anti-monopoly laws of the state of Louisiana, and particularly having engaged in a conspiracy to force down the price of raw sugar, an important agricultural product of this state, and to enhance the price of refined sugar in this state for speculative purposes, and of having conspired to restrain trade and commerce in sugar within the state of Louisiana, and of having monopolized and confined and conspired to monopolize trade and commerce in sugar within the state of Louisiana, and to have thereby forfeited the right to engage in business in Louisiana.

Plaintiff filed an amended and supplemental petition, which, after reiterating and amplifying a number of the charges set forth in the original petition, alleged, in substance:

That the sugar planters of Louisiana produce about 600,000 tons of sugar a year, and that the depression of one-half a cent a pound thereon constitutes an immense annual loss to them.

That the continued operations of the defendant company will bring ruin to many of the planters, unless the temporary rise of prices due to the European war saves them. That by reason of great peril the sugar industry should be protected from the further depredations of the American Sugar Refining Company by whatever remedies the law affords.

"That the Chalmette Refinery of the American Sugar Refining Company, in the parish of St. Bernard, immediately south of New Orleans, is the only refinery which can handle the Louisiana crop, except the Louisiana Refinery, which the American Sugar Refining Company, for monopolistic purposes, has closed down, although still fully equipped, and that, by reason of the closing down of said Louisiana Refinery, and of all other competitive refineries, by the American Sugar Refining Company, and by reason of the conduct of the American Sugar Refining Company, in aborting all attempts to establish competitive refineries, said company is under an obligation to the public to conduct said Chalmette Refinery as a quasi public utility, that the American Sugar Refining Company is actively violating its obligation to so conduct said Chalmette Refinery, by arbitrarily closing same down, and announcing its withdrawal from the market as a buyer, notwithstanding the fact that the crop of Louisiana raw sugar is about to come to the market, and has practically no other outlet than said Chalmette Refinery; and that the consequence of such action will be great demoralization in the Louisiana sugar industry and great and incalculable loss to those interested therein."

The supplemental petition concluded with a prayer for a rule on the defendant to show cause why an injunction should not issue "prohibiting the misuse and abuse by the American Sugar Refining Company of the corporate franchise heretofore enjoyed by it under the Constitution and laws of this state, and carrying on of any business by the American Sugar Refining Company within the state of Louisiana."

And the plaintiff further prayed that the defendant be ordered to show cause "why, to render said injunction fully effective, there should not be a receiver appointed to all the property, rights, and credits of the American Sugar Refining Company, within the state, and why, in the interest of the public, the business of the said American Sugar Refining Company, pendente lite, should not be carried on by such receiver, and especially why the Chalmette Refinery should not be operated."

And the plaintiff further prayed that the defendant be ordered to show cause, in the alternative, if a receiver be not appointed, with authority to operate, why there should not be a judicial sequestration of all the property, rights, and credits of the defendant within the state of Louisiana, and why a judicial sequestrator should not be appointed with such powers as the court might grant.

The original and supplemental petitions were filed in the name of the state of Louisiana "by Chandler C. Luzenberg, district attorney for the parish of Orleans, acting under the direction of his excellency, L. E. Hall, Governor."

Defendant appeared and excepted to said rule as follows:

"(1) That this suit is brought and this rule therein is taken solely under the provisions of article 190 of the Constitution of 1913, and said article is illegal, unconstitutional, null, void, and of no effect, because it was framed, ordained, and adopted by a constitutional convention called, convened, and assembled, under Act No. 1 of the Second Extraordinary Session of 1913, which said act is and was unconstitutional, null, void, and of no effect, for the reason that same was passed in contravention of the provisions of article 75 of the Constitution of this state, adopted in the year 1898.

"(2) That if the whole of the addition made by the Constitution of 1913 to article 190 of the Constitution of 1898 be not null, void, and of no effect, then that portion thereof, reading as follows, viz.: 'And it shall be the duty of the Attorney General, of his own motion, or any district attorney of the state, when so directed by the Governor or the Attorney General, to enforce this provision, by injunction or other legal proceedings, in the name of the state of Louisiana, and particularly by suits for the forfeiture of the charters of offending corporations, incorporated under the laws of the state of Louisiana, and for the ouster from this state of foreign corporations,'—is illegal, unconstitutional, null, void, and of no effect, for the reasons and causes following, to wit: That Act No. 1 of said Extraordinary Session of 1913, under and by virtue of which said convention convened, assembled and sat, provided, inter alia: '* * * That the said convention shall be, and is hereby prohibited from enacting, ordaining or framing any article or ordinance. * * * (c) Changing the provisions of existing laws touching, relating to, or in any manner affecting the following subjects. * * * (5) The term of office, duties, or compensation of any existing officer.'

"And that said article 190 of the Constitution of 1913, 'touches, relates to, affects and changes the duties of the Attorney General and district attorneys,' and especially of the district attorney of the parish of Orleans, who was without power or authority to represent the state of Louisiana in civil cases.

"(3) That no right or cause of action is shown in the averments upon the said rule, for sundry reasons, among others, that there is no warrant of law authorizing the appointment of a receiver, or for the issuance of an injunction, or a judicial sequestration in a case like this; that the only relief provided by article 190 of the Constitution of 1913 is the penalty of ouster, which can be imposed only by final judgment after issue joined and formal trial; that to grant the preliminary relief prayed for would deprive the defendant of its property without due process of law, and divest its vested rights, without previous compensation in violation of articles 2 and 166 of the Constitution of this state, and of the fourteenth amendment of the Constitution of the United States."

The exceptions filed by the defendant were sustained by the judge a quo, and the state has appealed from a judgment dismissing the suit.

The exceptions of defendant raise several questions of constitutional law, the first being:

That the proclamation of the Governor of date August 25, 1913, convening the General Assembly in extraordinary session, specially enumerated several subjects to be considered and acted upon, the first being "To adopt such legislation as may be required to make provision for the bonded debt of the state maturing January 1, 1914, and to call a constitutional convention, if deemed necessary for that purpose."

That article 75 of the Constitution of 1898 provides that "the power to legislate shall be limited to the objects specially enumerated in this proclamation convening such extraordinary session"; and that "any legislative action had * * * as to objects not enumerated in said proclamation shall be null and void."

That Act No. 1 of the Extraordinary Session of the General Assembly of 1913, convened pursuant to said proclamation, had no power and authority to submit to the people a proposition to hold a convention for any other purpose than for the bonded debt of the state maturing January 1, 1914.

That therefore Act No. 1 of 1913 was null and void, in providing for the submission to the people of a proposition to hold a convention for any other purpose.

Before considering this branch of the defense, we may state that the language used

in the proclamation of the Governor may be construed as expressive of one of his reasons for convening the Extra Session for the purpose of considering the question of calling a constitutional convention and not as a restriction of legislation on that subject, and we are satisfied that such was not his intention as shown by his approval of the action of the Legislature.

None of the Constitutions of the state of Louisiana contain provisions relative to conventions of the people, except the Constitution of 1812.

[1, 2] This silence of the organic law on the subject-matter leaves the question of calling such convention to the representatives of the people in legislative session convened. Judge Cooley, in speaking of state Constitutions, said:

"Some of these Constitutions pointed out the mode of their own modification; others were silent on that subject, but it has been assumed that in such cases the power to originate proceedings for that purpose rested with the Legislature of the state, as the department most nearly representing its general sovereignty; and this is doubtless the correct view to take on this subject." Const. Lim. (7th Ed.) p. 56.

See Id., pp. 59, 60.

The customary manner of calling constitutional conventions in the United States is by resolution of the Legislature followed by a submission of the question to the electorate. In the absence of any provision in the Constitution on the subject, it seems that the Legislature alone can give validity to a convention. See 6 R. C. L. § 17, p. 27.

The Constitution of 1898 pointed out a mode of revising its provisions by amendments proposed "by the General Assembly at any session thereof," with the concurrence of two-thirds of all the members elected to each House. The provisions for such action "at any session thereof" was taken from the Constitution of 1879, and was clearly intended to include extra sessions, which appear to have been excluded in previous Constitutions.

Under the Constitution of 1879, the power of the Legislature to submit proposals to the people for the holding of a convention was not subject to the restrictions applicable to constitutional amendments. State v. Favre, 51 La. Ann. 435, 25 South. 93.

Article 7 of the Constitution of 1812 provides a mode of revision by convention called by a majority vote of the people, on the recommendation of a majority of all the members elected to each House of the General Assembly. The Governor is not mentioned in this article.

. Article 140 of the Constitution of 1845 required the approval by the Governor of any proposed amendment to the Constitution. This provision was omitted in article 141 of the Constitution of 1852, and has not been reenacted in any subsequent Constitution. See article 147 of the Constitution of 1864, article 147 of the Constitution of 1868, article 256 of the Constitution of 1879, and article 321 of the Constitution of 1898. In short, since the adoption of the Constitution of 1852, the Governor has had nothing to do with proposed amendments to the Constitution, and the only duty imposed on him by article 321 of the Constitution of 1898 is to proclaim the result of the election on the question of approval and ratification of such amendments.

Under the Constitution of 1879, it was held that the Governor had no power to veto a bill proposing constitutional amendments. State v. State Secretary, 43 La. Ann. 590, 9 South. 776.

"The joint resolution of a Legislature proposing amendments to a state Constitution does not as a rule require the approval of the Governor of the state. * * * Similarly, a congressional resolution proposing an amendment to the Constitution of the United States does not require the approval of the President." 6 R. C. L. § 21, pp. 29, 30.

From the premises stated, we conclude that the General Assembly had power under the proclamation of the Governor to call a convention at the extra session of 1913; that the Governor, having authorized legislation

on the subject-matter at the Extra Session, had no further duty to perform in the premises.

The Legislature in enacting Act No. 1, Extra Session of 1913, paid no attention to the alleged restriction in the call of the Governor, and that official signed the act, and the people approved all the restrictions therein set forth.

When the people, acting under a proper resolution of the Legislature, vote in favor of calling a convention, they are presumed to ratify the terms of the call, which thereby become the basis of the authority delegated to the convention. 6 R. C. L. § 18, p. 27.

[3] Act No. 1 of the Extra Session of 1913 calling for a convention, with full power and authority to frame and adopt, without submission to the people, a new Constitution of the state, subject, however, to a number of restrictions enumerated in said act, having been adopted by the people, constituted a mandate to the convention of 1913.

The defendant charges that article 190 of the Constitution adopted by the convention of 1913 is violative of one, or more, of such restrictions, for the reasons set forth in the exceptions filed below. Said article is an amendment and re-enactment of article 190 of the Constitution of 1898, which reads as follows:

"Art. 190. It shall be unlawful for persons or corporations, or their legal representatives, to combine or conspire together, or to unite or pool their interest for the purpose of forcing up or down the price of any agricultural product or article of necessity, for speculative purposes; and the Legislature shall pass laws to suppress it."

Article 190 of the Constitution of 1913 reads as follows:

"Art. 190. It shall be unlawful for persons or corporations, or their legal representatives, to combine or conspire together, or to unite or pool their interests, for the purpose of forcing up or down the price of any agricultural product or article of necessity, for speculative purposes; and all combinations, trusts, or conspiracies in restraint of trade or commerce,

* * * are hereby prohibited in the state of Louisiana, and it shall be the duty of the Attorney General, of his own motion, or any district attorney of the state, when so directed by the Governor or the Attorney General, to enforce this provision, by injunction or other legal proceedings, in the name of the state of Louisiana, and particularly by suits for the forfeiture of the charters of offending corporations, incorporated under the laws of the state of Louisiana, and for the ouster from the state of foreign corporations. Provided, however, that nothing herein contained shall prevent the Legislature from providing additional remedies for the enforcement of this article.

"The provisions of this article are self-operative."

Act No. 1 of 1913 submitted to the people a proposition to hold a constitutional convention "for the purpose of framing and putting into effect a new Constitution." The act contemplated a revision of the Constitution of 1898, subject to the restriction that no article or ordinance should be enacted inconsistent with any existing constitutional provision, except such as might be enacted in relation to the state's bonded debt, or respecting the powers and duties of the sewerage and water board of the city of New Orleans, and subject to further restrictions, prohibiting the enactment of ordinances:

"Changing the provisions of existing laws touching, relating to, or in any manner affecting the following subjects: (1) * * * (2) * * * (3) * * * (4) * * * (5) The term of office, duties or compensation of any existing officer."

Article 190 of the Constitution of 1913 is an amendment and re-enactment of article 190 of the Constitution of 1898, and its denunciation of unlawful trusts, combinations, and conspiracies, is not inconsistent with any provision of the Constitution of 1898. Defendant, however, contends that article 190 changes the provisions of existing laws relative to the duties of the district attorney for the parish of Orleans. The article provides that:

"It shall be the duty of the Attorney General, of his own motion, or any district attorney of the state, when so directed by the Governor or the Attorney General, to enforce this pro-

vision by injunction or other legal proceedings, in the name of the state of Louisiana."

It is argued by defendant that, under the laws existing at the date of the adoption of the Constitution of 1913, it was not the duty of the district attorney for the parish of Orleans to represent the state in civil suits, and therefore article 190 imposed a new duty upon him.

Act No. 96, p. 122, of 1880, reads as follows:

"Section 1. Be it enacted, etc., that it shall be the duty of the district attorneys throughout the state (the parish of Orleans excepted) to attend the sessions of the courts in each of their respective judicial districts, and shall represent the state in all civil and criminal actions.

"In the districts in which the Supreme Court shall hold sessions they shall also represent the state in all criminal cases coming before said court."

"Sec. 2. Be it further enacted, etc., that it shall be the duty of the district attorney and assistant district attorney of the parish of Orleans to conduct the prosecution of all criminal cases coming before the criminal courts of said parish."

The other sections of the act provide no fees or compensation for the district attorney for the parish of Orleans except in criminal cases.

Act No. 6, p. 14, of 1880, had provided:

"That the Attorney General be and he is hereby relieved of the prosecution of all criminal causes before the criminal courts of the parish of Orleans; provided, he shall act in all cases when requested so to do by the Governor or either branch of the General Assembly of the state."

And section 131 of the Revised Statutes of 1870 had made it the duty of the Attorney General:

"To appear for the state, and prosecute and conduct, in the district courts in the city of New Orleans, all civil suits in which the state may be a party or be interested."

Plaintiff's counsel has cited no subsequent statute repealing Act No. 96 of 1880, which therefore must be taken as an existing law when the Constitution of 1913 was adopted.

It is clear that this act confers no power on the district attorney of the parish of

Orleans to represent the state in this suit, which partakes of the nature of one in equity, and is certainly not a criminal case, in legal or common intendment.

Counsel for the state cites Act No. 288, p. 589, of 1914, entitled:

"An act to establish procedures and rules of evidence in proceedings under the laws of Louisiana relating to trusts, monopolies, and combinations in restraint of trade, commerce or any other business."

Section 1 of this act reads in part as follows:

"That whenever any action is commenced by the Attorney General, or by any district attorney, acting under his direction, or that of the Governor, to enforce the provisions of any law of this state respecting monopolies, or combinations or conspiracies in restraint of trade, * * * and said officer representing the state * * * desires to take * * * testimony," etc.

The title does not purport to change or alter the duties of district attorneys; and special legislation enlarging the duties of the district attorney of the parish of Orleans, as fixed by Act No. 96 of 1880, is not covered by a title relating to procedure and rules of evidence. Section 1 of the act refers to district attorneys throughout the state, authorized by law to represent the state in both criminal and civil cases. Surely, neither the Attorney General, nor the Governor, by directing the district attorney for the parish of Orleans to institute this suit, could enlarge the statutory duties of that official. Section 1, therefore, assumes that the district attorney, directed by the Attorney General or the Governor to sue, already has the authority to sue in the name of the state.

We therefore conclude that this suit must be dismissed for want of capacity of the district attorney of the parish of Orleans to sue and stand in judgment for the state.

This conclusion renders it unnecessary to consider the exception of no cause of action.

It is therefore ordered that the judgment below be amended so as to dismiss this suit,

on the exception to the capacity of the district attorney for the parish of Orleans to sue and stand in judgment for the state, and that as thus amended be affirmed, reserving to the defendant the right to renew its other exceptions in any future litigation with the state.

See dissenting opinion of O'NIELL, J., 68 South. 746.