PROVOSTY, J., dissents as to the mode of computing the damages for value of sublease; otherwise concurs.

SOMMERVILLE, J., dissents.

(81 South. 307)

No. 23277.

F. B. WILLIAMS CYPRESS CO., Limited, v. MARTIN, Sheriff and Tax Collector, et al.

(Feb. 3, 1919. On Application for Rehearing, March 11, 1919.)

(Syllabus by the Court.)

1. HIGHWAYS ⬤⟞127(1) — TAXES — NATURE — AD VALOREM TAX—ASSESSMENT—SPECIAL BENEFITS.

Where, by proceedings, the legality of which is not questioned, the consent of the property tax payers of a parish has been obtained to the levy of a special tax; in excess of the 10-mill limit to which the parishes are otherwise subjected, but not alleged to be in excess of the limit authorized by law upon the obtention of such consent, an ad valorem tax is levied upon all the land subject to taxation by the parish authorities, for the construction and maintenance of public roads and highways throughout the parish, such tax cannot be confused with a local assessment the validity of which, as to particular land, may depend upon the benefit to be derived therefrom by such land, but is to be regarded as a tax levied for the benefit and general welfare of the parish, to which all the taxable property in the parish may lawfully be subjected, without regard to benefits, positive or relative, conferred or not conferred, upon lands of particular persons or corporations.

2. HIGHWAYS ⬤⟞127(1)—ROAD CONSTRUCTION —SPECIAL TAX—PROPERTY SUBJECT.

Where a police jury organizes its entire parish (save a particular municipality excluded by law from its jurisdiction) into a road district, and a special tax for road construction and maintenance is voted by the property tax payers, it (police jury) is vested with no discretion as to the property upon which the tax is to be levied, but must levy it upon all the lands subject to taxation within its jurisdiction.

O'Niell, J., dissenting in part.

Appeal from Nineteenth Judicial District Court, Parish of St. Martin; James Simon, Judge.

Suit by the F. B. Williams Cypress Company, Limited, against W. O. Martin, Sheriff and Tax Collector, and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Burke & Smith, of New Iberia, for appellant.

E. Vuillemont, Dist. Atty., of New Iberia, and Mouton, Mouton & De Baillon, of La Fayette, for appellees.

Graham & Martin, of New Orleans, for Parish of St. Martin.

Statement of the Case.

MONROE, C. J. The object of this suit (instituted in January, 1918) is to perpetually enjoin the collection of a road tax, levied by the police jury of the parish of St. Martin upon all the lands in that parish (save those within the town of St. Martinsville), in so far as it bears upon certain lands belonging to plaintiff, and therein situated,

and to have the lands decreed "to have been illegally included within the road district and illegally subjected to any tax for the purpose of constructing or maintaining roads in the parish of St. Martin." A preliminary injunction, prohibiting the collection of the tax then exigible, having issued, defendants (tax collector and police jury) ruled plaintiff to show cause why it should not be dissolved, on the ground that the petition discloses no cause of action, and the court having given judgment, dissolving the injunction, as prayed for, plaintiff has appealed to this court.

The allegations of the petition which are material in the consideration of the issues presented for decision are, substantially, as follows:

That plaintiff is engaged in the sawmill business and owns, in the parish of St. Martin, large bodies of land which come within designation of "swamp or overflowed lands, unfit for cultivation," and valuable mainly for the timber which they bear. That they are separated from the agricultural lands of the parish and are accessible by streams or lakes but not otherwise, save in dry weather and under great difficulty, for which reasons no system of roads has ever been constructed through them or can be so constructed, save at an expense out of proportion to all values or benefits to be derived therefrom.

That, during the year 1917, the police jury organized the parish into a road district, and submitted to the taxpayers a proposition to impose ad valorem taxes of five mills, for 35 years, and two mills, for 40 years, respectively, upon all the lands in the parish, and to issue negotiable bonds, wherewith to obtain the necessary funds "for the purpose of constructing" (and maintaining) "roads and highways in and through the agricultural portion of the parish, * * * where said road construction is possible and of material advantage to the inhabitants of that portion of the parish; and that, solely for the purpose of deriving revenues from the lands of petitioner, for the benefit of lands situated in other portions of the parish, * * * and with the necessary knowledge that there was not the intent to construct any roads over or through the lands of petitioner, or which were accessible to the lands of the petitioner, or to any immediate territory in which said lands are situated, the said police jury included all of said lands in the territory to be subjected to taxation, well knowing that the proposed system could, in no man-

144 LA.—25

ner, inure to the benefit of the said property, directly or indirectly. That the course adopted, in so including said lands, was not in the exercise of any sound legal, or legislative, discretion, but was in pursuance of the plan to subject the entire property in the parish, whether benefited by the proposed public works or not, to a forced contribution to the construction and maintenance thereof.

"That, in conformity with said purposes, the election was held conformably to existing laws of the state for the imposition of an ad valorem tax of five mills, for 35 years, for the purpose of the construction of the roads, and an additional tax of two mills for a period of 40 years, for the maintenance of the roads, and upon which election was predicated the issuance of bonds, from the proceeds of which it is contemplated to undertake and consummate the works hereinabove set forth.

"That the injury inflicted upon petitioner is accentuated by the fact that, not only is all the land of a swamp nature, as outlined above, but that a large portion thereof is separated from the main body of the parish of St. Martin—another parish intervening between the two bodies—so that it would be physically impossible for the police jury of the parish of St. Martin, or any other body thereof, to construct any system of highways reaching to, affecting, or benefiting those lands so situated. * * * That the so-called tax * * * is not, in its nature and essence, a tax, in the ordinary sense of the word, but is a forced local contribution which can have no legal basis except upon the fact that the property upon which it is levied derives a benefit from the contribution, * * * and that the property of petitioner, because of its nature, location, and isolation from the main agricultural (or high) land portion of the parish, is, physically, excluded from any system of road construction, and can never receive any amount of benefit from the construction of said roads, or the maintenance thereof, as is proposed by said parish authorities. That the action and conduct of the police jury, * * * as outlined above, * * * was an unconstitutional usurpation of authority, and was, in effect, an effort to take petitioners' property without due process of law, in violation of the fourteenth amendment. * * * That petitioner was deprived of the opportunity of voting upon said issue or of entering any protest against the attempt to tax its properties in the manner and for the purposes above set forth," etc.

And there are other allegations to the effect that petitioner has tendered (and, as

shown, paid) its other taxes, to wit, parish $2,293.55, state $1,602.43, Confederate veteran $320.49, good roads $80.12, levee $3,276.50, acreage $639.60, school $982.95, and that the taxes in dispute are "special road $1,802.02," and "maintenance $655.30."

By supplemental petition, plaintiff tenders certain maps, with a view of enabling the court to understand the swamp and high land areas within which, respectively, its lands are situated, and, in that connection, it is alleged that certain proportions of the different townships (which are specified) embraced in those areas are swamp lands; but we confess that we are unable to deduce therefrom what proportions of those proportions are plaintiff's lands. There is also filed with the supplemental petition a copy of the ordinance of the police jury calling the election at which the requisite majority of the qualified taxpayers voted for the tax and issue of bonds; but, as the regularity of the proceedings leading to the levy have not been called in question, nor their sufficiency, otherwise than by the complaint that plaintiff's lands are thereby subjected to a "local assessment" with no corresponding benefit, we shall confine our attention to that complaint, and express no opinion upon issues not raised by the pleadings or discussed by counsel.

### Opinion.

The suit has been instituted upon the assumption that the tax in question is a local assessment, to sustain the validity of which it must be shown that the property taxed will be specifically and proportionately benefited.

"The right to impose a special tax," say the learned counsel for plaintiff, "is dependent upon the benefit to be received by the property, due to this local improvement, in excess of the benefit conferred on the public at large. The actual benefit conferred must be regarded as the limitation upon the assessment."

Another view urged on behalf of plaintiff is that the tax, as levied upon its lands, is unreasonable and unjust, and that it is within the province and is the duty of the courts to afford a remedy.

"Beyond the fact that the Legislature is restricted, when exceeding sound reason or justice," say the counsel in their brief, "there is a greater limitation upon the authority of a police jury to which is delegated the right to organize road districts composed of the whole or portions of the parish. The grant of the general power to organize road districts has the implied limitation that its exercise shall be reasonable, and, if it be clearly unreasonable, unjust, or oppressive, it will be held invalid by the courts."

The position of the defendants is sufficiently indicated by the following excerpts from the brief of their counsel, to wit:

"Special taxes voted by the property holders, under the Constitution and laws of this state, for the construction of public roads and public schools and in aid of the construction of railroads, are not local assessments in the sense that the property taxed must be specially benefited. * * *

"Police juries, in exercising their powers in respect to public roads, under the statutes of this state, act as state agencies, upon a subject-matter of state concern."

As the learned counsel refer to the Constitution of 1913, it may be as well to call attention to the fact that Act No. 1 of the Second Extra Session of 1913, by which there was submitted to the people the proposition to hold a convention for the purpose of framing that instrument, and which delimited the powers of the convention, so to be held, declared that—

"Said convention shall be, and is hereby prohibited from enacting, ordaining or framing any article or ordinance—

"a. Inconsistent with any existing constitutional provision [an exception being made on the subject-matter of the state bonded debt, to obtain authority for the adjustment of which was the main purpose for which the convention was assembled]. * * *

"c. Changing the provisions of existing laws touching, relating to, or in any manner affecting the following subjects:

"(1) Any public board or commission of the

state or of any political subdivision thereof. * * *

"(4) Parochial or municipal corporations. * * * "

And that this court has several times decided that the proposition contained in the act having been submitted to, and accepted by the people, in accordance with its terms, operated as a mandate whereby the power of the convention was regulated and determined. State v. Am. Sugar Ref. Co., 137 La. 407, 68 South. 742; Foley v. Dem. Par. Committee, 138 La. 220, 70 South. 104; Hayne v. Assessor, 143 La. 697, 79 South. 286.

We must therefore, for the purposes of this case, seek authority elsewhere than in the Constitution of 1913, save in so far as its contents do not conflict with the provisions of the Constitution of 1898, or change the then existing laws touching, relating to, or in any manner affecting, any of the public boards or commissions of the state, or of its political subdivisions, or any of its parochial or municipal corporations, and save in so far as that Constitution may have been amended since its adoption; it being understood that all constitutional amendments which have been so adopted are regarded as amendments thereto.

"The taxing power," says the Constitution "may be exercised by the General Assembly for state purposes and by parishes and municipal corporations and public boards, under authority granted to them by the General Assembly, for parish, municipal, and local purposes, strictly public in their nature." Article 224.

In dealing with the question of the exercise of the taxing power for the building of roads, Judge Dillon, in the fourth edition of his work on Municipal Corporations, has this to say:

"Taxes, it is everywhere agreed, can only be imposed for public objects, and taxation to aid in building the roads of private railway companies, even if the use is a public use, is hardly consistent with our traditional respect for the inviolability of private property and individual rights. * * * Since the first edition of this work, the Supreme Court of the United States * * * have directly sustained the validity of legislative acts authorizing municipal aid to railways. * * * This ends judicial discussion, if it does not terminate doubts. The Supreme Court, in reaching this result, places its judgment upon the ground that highways, turnpikes, canals, and railways, although owned by individuals under public grants or by private corporations, are publici juris; that they have always been regarded as governmental affairs, and their establishment and maintenance recognized as among the most important duties of the state in order to facilitate transportation and easy communication among its different parts; and, hence, that the state may put forth, in favor of such improvements, both its power of eminent domain (as it constantly does) and its power to tax, unless there be some special restriction in the Constitution of the particular state." Dillon, Mun. Corp. (4th Ed.) vol. 1, p. 230 et seq., §§ 157, 158.

The foregoing excerpt is quoted with approval in City of Lafayette v. Bank, 137 La. 96, 68 South. 238, in which was presented the question of the authority of a municipal corporation in this state to levy a tax and issue bonds for the construction and maintenance of roads and bridges leading to, and from, but outside the boundaries of, the municipality, and in which this court said (as may be here said):

"In the instant case, there is no question * * * of 'mere legislative authority,' or of private interest involved, for the grant of authority comes from the Constitution, and the roads and bridges to be constructed and maintained are the public roads and bridges of the parish, open, so far as we are advised, to the free use of the public and administered by the public authorities.

"Moreover, the levy of the tax in question was not compulsory, but was invited by the owners of the property upon which it is imposed, speaking through a majority, in number and value, at a special election held in accordance with the provisions of the Constitution."

No conceivable object has been more uniformly dealt with by the state of Louisiana as of public concern, calling for the exercise of the power of taxation by the state

and its political subdivisions, than the construction and maintenance of roads and bridges. Section 2743 of the Revised Statutes, as a re-enactment of an act of 1813, reads:

"The police juries shall have power to make all such regulations as they may deem expedient:

"First—For their own government.

"Second—As to the proportion and direction, the making and repairing of the roads, bridges, * * * dikes, levees and * * * highways. * * *

"Eighth—To lay such taxes as they may judge necessary to defray the expenses of their respective parishes."

Article 232 of the Constitution, as originally enacted, contained the provision that "no parish * * * tax for all purposes whatsoever, shall exceed in any one year ten mills on the dollar of * * * valuation," to which, however, there was added the proviso, "that for giving additional support to the public schools, and * * * constructing public buildings, public schoolhouses, bridges, wharves, levees, sewerage work and other works of permanent public improvement, the title to which shall be in the public, any parish, municipal corporation, ward or school district may levy a special tax in excess of said limitation," upon obtaining, in the manner prescribed, the approval of a majority of the property tax payers, in number and value, qualified as electors and voting at an election called for the consideration of the question.

Article 291, as originally enacted, authorized police juries to divide their respective parishes into road districts, "to set aside at least one mill per annum of the taxes levied by them," and impose certain per capita and license taxes, for the construction and maintenance of roads and bridges, and further declared that "other taxes may be levied by the police juries for road and bridge purposes," upon obtaining the approval of the property tax payers, as required by article 232.

[1] It will readily be seen, therefore, that the term "special tax, in excess of said limitation," as used in article 232, is merely descriptive and has no other purpose or significance than to distinguish the tax, required to be levied under the special authority to be conferred by the vote of the property tax payers, from the general tax of ten mills, "for all purposes," to which the police juries are otherwise limited by the Constitution; that the term "other taxes," as used in article 291, relates back to the taxes previously authorized for road and bridge purposes; and that, in the one case, as the tax in excess of which the special tax is authorized is a tax to be levied for general governmental purposes, which, as may easily be shown, includes the construction and maintenance of roads and bridges, the special tax for road and bridge purposes bears the same character, and is no more to be regarded as a local assessment, dependent for its validity upon the benefit conferred upon the property of any particular taxpayer, than is a tax for the maintenance of the schools or the erection of a courthouse; and, in the other case, that as the tax already authorized, for road and bridge purposes, was a tax to be levied in the exercise of the governmental power vested in the police juries, to defray the ordinary expense of their parishes, so the "other taxes," to be levied with the approval of the property tax payers, to defray an expense of that kind, bear the same character, save that they are more purely democratic, being, in effect, imposed by the people themselves, speaking through a majority rather than by their representatives.

The articles in question have been variously (and confusingly) amended, but we find nothing in the amendments from which it can be deduced that the payment of a tax,

lawfully levied to "defray the expense of a parish," can be resisted on the ground that particular property, subject to taxation, derives no benefit therefrom. The opinion to which we have referred (City of Lafayette v. Bank) contains, also, the following excerpt from Judge Dillon's work:

"Taxation implies, as we have seen, an imposition for a public use; and it also implies that the imposition shall be upon some system of apportionment, so as to secure uniformity among those who are, or ought to be, subject to the particular tax or assessment. * * * But where the imposition is properly a tax, and no specific or express constitutional limitation exists, the power of the Legislature is supreme and without any theoretical bounds. 'If the right to impose a tax exists,' says the Supreme Court of the United States, 'it is a right which, in its nature, acknowledges no limit;' and the reason is that the needs of the public or of the government can ordinarily have no bounds set to them." Dillon, Mun. Corp. (4th Ed.) vol. 2, p. 896, § 737.

The system of apportionment upon which the tax here in question is based is that of values—each acre of land being taxed upon the basis of its assessment—and, if plaintiff's lands are to be taxed at all, no fairer system seems attainable. It is not, however, the system to which plaintiff objects, but the fact that any tax is imposed for the construction and maintenance of public roads, because, as it alleges, no direct benefit of equivalent value will inure to the lands. But if that objection be good, as against the tax for roads, it would seem to be equally good as against the "school tax," the "Confederate veteran tax," and the "good roads tax," imposed under the authority of the Constitution, as amended pursuant to act No. 14 of 1910, proposing that "a special tax of one-fourth of one mill" be "levied * * * for the purpose of creating a road fund, the same to be considered a part of the present six-mill tax authorized to be levied [for state purposes] by this Constitution."

In Houck v. Little River Drainage District, 239 U. S. 254, 36 Sup. Ct. 58, 60 L. Ed. 266, plaintiffs sought to restrain the collection of a tax of 25 cents an acre levied upon some thousands of acres of land, owned by them within the (defendant) district, to defray the expense of a preliminary survey authorized by a statute which was alleged to be unconstitutional, in that it imposed the tax upon lands that varied in value, averring:

"That no benefits had accrued or would accrue to plaintiffs' lands either from the expenditure of the money sought to be raised by the tax or from the carrying out of the proposed plan; that a large portion of the lands in the district, and those of plaintiffs in large part, were to be condemned for a right of way for ditches and catch basins; and that the tax had been levied against every acre within the district, as a level tax, without regard either to relative value or to benefits, or to the fact that portions of the lands would be damaged and other portions would be taken by condemnation, or that a large extent of territory, if added to the district as had been proposed, would receive the benefit of the tax without being charged with any part."

The case appears to have gone to the Supreme Court on a writ of error from a judgment sustaining a demurrer, and was decided, without dissent, through Mr. Justice Hughes, who, among other things, said:

"In authorizing the tax, it is said, the Legislature has departed from the principle of benefits, and the tax is asserted to be pro tanto an uncompensated taking of their property for public use. But the power of taxation should not be confused with the power of eminent domain. Each is governed by its own principles. [Citing authorities.] A tax is an enforced contribution for the payment of public expenses. It is laid by some rule of apportionment, according to which the persons or property taxed share the public burden. * * * The power of segregation for taxing purposes has everyday illustration in the experience of local communities, the members of which, by reason of their membership, or the owners of property within the bounds of the political subdivision, are compelled to bear the burdens both of the successes and of the failures of local administration. When local improvements may be deemed to result in special benefits, a further classification may be made and special assessments imposed

accordingly, but even in such case there is no requirement of the federal Constitution that for every payment there must be equal benefit. The state in its discretion may lay such assessments in proportion to position, frontage, area, market value, or to benefits estimated by commissioners. [Citing authorities.] * * *

"These outlays for organization and preliminary surveys could well be considered specially to concern the district, as constituted, as highways or public buildings or plans for the same (whether consummated or abandoned) could be said to concern counties or towns."

In other words, the preliminary survey of the lands of the district, with a view to the formulation of a plan of drainage, was held to be a matter of concern to the entire district, the expense of which it was competent to impose upon the entire district, just as it is competent, for that reason, to impose, upon some uniform basis of apportionment, the expense of constructing the highways and public buildings, or any other governmental expense of a county, on the taxable property therein situated. The Constitution of this state declares that—

"Taxation shall be equal and uniform throughout the territorial limits of the authority levying the tax, and all property shall be taxed in proportion to its value." Article 225.

[2] The police jury had therefore no alternative but to levy the tax in dispute upon the lands of the plaintiff, since it was required to levy the tax upon all the land within the limits of its taxing power, and the object of the tax called for the exercise of that power and not for the exercise of the power to levy a local assessment.

We may remark, in conclusion, that we think the allegation of the petition to the effect that the tax was levied in order to obtain the necessary funds "for the purpose of constructing roads and highways through the agricultural portion of the parish" is, in effect, destroyed by the ordinance, which is annexed to the supplemental petition and which shows that the purpose in levying the tax is to construct and maintain roads "in the parish," leaving it open to the police juries to construct roads wherever, in their discretion, they determine that it will be for the best interests of their respective parishes.

The judgment appealed from is therefore affirmed.

O'NIELL, J., concurs in the decree, but dissents from the ruling that the court can, for the reasons stated, declare invalid a provision of the Constitution of 1913. See dissenting opinion in Foley v. Democratic Committee, 70 South. 105.

On Application for Rehearing.

DAWKINS, J. These cases are clearly distinguishable from that of Myles Salt Co. v. Board of Commissioners, etc., 239 U. S. 478–485, 36 Sup. Ct. 204, 60 L. Ed. 392, L. R. A. 1918E, 190. That case found its way to the Supreme Court of the United States upon an exception of no cause of action filed and sustained by the district and Supreme Courts of Louisiana. The allegations of the petition, taken as true for the purposes of the exception, were that the tax levied was for the sole purpose of raising revenue to drain certain lands, not including the plaintiff's (which was 175 feet above sea level as against 15 feet for the surrounding lands), and that the only effect would be to benefit and improve the private property of the other parties, without any resultant benefit to plaintiff. Under those circumstances, there can be no doubt but that the primary purpose of the drainage was to benefit and render subject to cultivation or other use, specific property, and without necessarily carrying any benefit to the public at large; while public roads are a public improvement, like public schools, a courthouse, etc., the title to which is vested in the public, and whose building and maintenance benefit the whole public, owners of property, as well

as those who own none, also the people of the whole community or state, in forming part of a general system of good roads. The plaintiffs in the cases at bar, presumably, are interested in having good roads for the purpose of reaching the courthouse, schools, etc., for the purpose of paying taxes, or otherwise dealing with those agencies; and, whether the roads touch their property or not, to the extent which they may use them, wherever the point of commencing such use may begin, they enjoy the benefits as much as any other resident and taxpayer of the parish. If it be that their lands are such that roads cannot be built thereon, or if the police jury in the exercise of a reasonable discretion does not see fit to construct same thereon, then that is a situation which they accepted and should have foreseen when voluntarily selecting the property for purchase. If only those to be directly benefited could be taxed for road building, then every one whose property was not touched by or rendered more accessible by the building of roads would, to that extent, have a similar complaint, in that the benefits were not uniform. The result would be to nullify the admittedly wise provisions for public road building.