(61 South. 530.)

No. 19,152.

### CITY OF SHREVEPORT v. McCLURE et al.

(Dec. 2, 1912. On Rehearing, March 31, 1913.)

*(Syllabus by the Court.)*

1. MUNICIPAL CORPORATIONS (§ 384*) — STREETS—INJURY TO ABUTTING OWNERS.

In this state the streets of a municipality belong to the public; and abutting owners have no right to recover damages for disturbance, discomfort, and inconvenience resulting from the street traffic, even of such a nature as may diminish the value of their property for residential purposes.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 924; Dec. Dig. § 384.*]

2. EMINENT DOMAIN (§ 262*)—EXPROPRIATION FOR ALLEY—ASSESSMENT OF DAMAGES —REVIEW.

In the expropriation of a strip of ground off the rear end of residential lots for the purpose of widening an alley so as to serve as an approach to a public bridge, the verdict of the jury of freeholders on the quantum of damages will not be disturbed unless manifestly excessive or insufficient.

[Ed. Note.—For other cases, see Eminent Domain, Cent. Dig. §§ 681–686; Dec. Dig. § 262.*]

Land, J., dissenting.

Appeal from First Judicial District Court, Parish of Caddo; E. W. Sutherlin, Judge.

Consolidated suits by City of Shreveport against Noah W. McClure and others. From the judgments all parties appeal. Affirmed.

Alexander & Wilkinson and Thigpen & Herold, all of Shreveport, for plaintiff. G. W. Jack, of Shreveport, for defendants.

LAND, J. The authorities of the city of Shreveport and of the parish of Bossier are engaged in building a high traffic bridge across Red river. The location of the bridge rendered it necessary for the city of Shreveport to expropriate a sufficient space for an abutment on a bluff in said city overlooking and abutting on Commerce street, and also space for a roadway from the terminus of the bridge to Spring street or to Lake street.

The bluff in question, many years ago, was subdivided into lots, all of which until recently have been occupied for residential purposes.

When the site of the proposed bridge was located, Mr. S. N. Kerley owned lots 14, 15, and 16, and the city of Shreveport instituted a suit to expropriate lot 14 for an abutment of the bridge, and 10 feet off the rear portions of lots 15 and 16 for the purpose of enlarging the alley, 20 feet wide, leading to Lake street, which bounds the block on its north side. About the same time the city of Shreveport instituted suits against the following named persons, respectively, for the purpose of expropriating 10 feet off the rear portions of their lots in order to widen the same alley:

Mrs. Kate J. Pickett..........Lots 9 and 10.
R. Lawhon ........................Lot 11.
Noah W. McClure..................Lot 12.
Mrs. Sarah F. Martin et al....Lots 13 and 14.
Mrs. Clarence Ellerbe........Lots 15 and 16.

In the suit against Kerley, the verdict was in favor of the defendant for $10,000 for lot 14 and damages to lots 15 and 16.

The suits against the defendants herein were consolidated for the purposes of trial, and by consent were tried before the same jury which sat in the Kerley case.

The jury found in favor of the plaintiff for the strip of ground sued for, and in favor of the respective defendants, as follows: To Mrs. Ellerbe, $1,365; to Mrs. Martin et al., $1,495; to N. W. McClure, $923; to Z. R. Lawhon, $975; and to Mrs. Kate J. Pickett, $1,365.

Judgments were rendered pursuant to the verdicts, and the plaintiff and all the defendants have appealed.

The issues have been narrowed down to two questions, to wit:

(1) The value of the strip taken.

(2) The damage to the remainder of the property.

The trial judge, in his reasons for overruling the motion for a new trial, states that the jurors were exceptional in business ability and intelligence, and all of them were well-known property holders, and some of them dealers in real estate.

The estimates of the witnesses as to the value of the strip 10 feet in width to be taken from the rear of the premises vary from $300 to $750 for each lot. The grade of the alley will be lowered about 18 inches on the average, and the cut at Lake street from 3 to 4 feet in depth. All of the rear fences will have to be moved back, and new driveways constructed. The cut at Lake street will compel Mrs. Ellerbe to construct

a retaining wall, and her servants' house will have to be taken down or moved to a point very close to the main dwelling. Lawhon will lose a well and probably a stable, valued by him at $250. Mrs. Pickett will lose fruit trees valued by her at $300. The taking of the strip will leave the ell of Mrs. Martin's dwelling within a few feet of the line of the new street.

The improvements on all the lots are valuable for residential purposes, and would be useless for the purpose of commerce. The value of the property for commercial purposes is purely speculative.

The suit against S. N. Kerley was for the purpose of expropriating lot 14, which was vacant, and 10 feet off the rear end of lots 15 and 16 on which the residence was situated. No improvements were involved except the rear fence. The city of Shreveport did not appeal, but paid the judgment for $10,-000 and costs, rendered in favor of S. N. Kerley. As lot 14 was worth about $4,000, the city must have paid $6,000 for the strip off the rear of lots 15 and 16, and for consequential damages to the remainder of said property. S. N. Kerley claimed $1,500 for the strip.

Considering the amount of damages paid to S. N. Kerley, we do not think that the city of Shreveport has any just right to complain of the quantum of the awards to the other defendants.

Owners of residential lots do not sell strips off their back yards, and therefore such strips can have no market value or price. The record shows that intelligent men differ widely as to the value of the strips in question, for the reason, perhaps, that there is no standard by which their value can be measured. As stated supra, the estimates vary from $300 to $750 per lot. In such a case, we think that the "just and adequate compensation" guaranteed by the Constitution may be safely left to the verdict of a jury of freeholders of the vicinage selected by the parties in interest. Considering all the elements of damage, we are not prepared to hold that the verdicts are manifestly excessive in amounts.

The defendants contend that the value of their property will be diminished to the extent of 50 per cent. by the use of the enlarged alley as a roadway for traffic to and from the proposed bridge over Red river. They argue that the constant passage of all kinds of vehicles and of all kinds of people through the alley will destroy the privacy of their homes and greatly diminish their value for residential purposes. This apprehension appears to be justified by the overwhelming preponderance of opinion evidence in the record. Many witnesses of more than ordinary intelligence and standing in the community testified that, by reason of the probable traffic over the proposed bridge, the value of the property of the defendants will be diminished in value by one-half. These witnesses were familiar with the kind of traffic which has for many years passed over the wagonway of the Vicksburg, Shreveport & Pacific Railroad bridge at Shreveport, and in imagination saw the same stream of negroes, animals, and vehicles pouring through the narrow roadway in the rear of defendants' premises. Plaintiff's witnesses concede the injurious result of such a traffic to the residential value of defendants' lots, but some were of opinion that the commercial value of the ground will be enhanced by the construction of the new bridge, and that defendants' dwellings could be removed to other sites.

The city attorney contends that any depreciation in the value of defendants' lots which may result from future traffic over the enlarged alley will be damnum absque injuria.

[1] The legal right of the city of Shreveport to construct the bridge in question, and to expropriate private property for the pur-

pose of providing a roadway to the structure, is not contested in this court; but counsel for defendants contend that article 167 of the Constitution of 1898, providing that private property shall not be taken nor damaged for public purposes without just and adequate compensation previously paid, is applicable to the conversion of the alley into a street for the purposes of traffic over the proposed bridge across Red river. This contention rests on the premise that the owner of a lot abutting on a public street may recover damages for loss or inconvenience suffered by reason of its ordinary use as a public highway.

In this state a street is a public thing, the property of which is vested in the community at large. Civil Code, arts. 453, 454. A street is for the common use of a city or other place. Id. It follows that the only right that the defendants can have in or to the alley, or proposed street, is that of common use as members of the community.

Defendants' counsel cite Manning v. City of Shreveport, 119 La. 1044, 44 South. 882, 13 L. R. A. (N. S.) 452, and Helmer v. Colorado So. N. O. & P. Ry. Co., 122 La. 141, 47 South. 443.

In the Manning Case, the claim for damages was based on a change of the street grade. On rehearing, the court expressed the opinion that under article 167 of the Constitution of 1898 a municipal corporation is responsible for damage to private property resulting from the initial grading of the street as well as from a change of the established grade. The case is applicable as far as the grade of the alley in question was changed.

In the Helmer Case, the action was for damages to property caused by the construction and operation of a commercial railroad in a public street. The court held that the right of recovery included the damages to property caused by noise, smoke, vibration, etc., incident to the operation of the railroad which permanently depreciated the value of the property; the amount to be determined by the difference between the market value before the road was built and the market value afterwards.

In the same case, the court cited with approval the following extract from McMahon v. Railroad Co., 41 La. Ann. 827, 6 South. 640, to wit:

"Mere consequential injuries to the owner arising from discomfort, disturbance, injury to business, and the like remain as they were before, damna absque injuria, particular sacrifice which society has the right to inflict for the public good."

We are of opinion that the damages claimed, which are based on anticipated discomfort, disturbance, and loss of privacy that may result from the use of the new street as a highway, are of this character. Such damages do not flow from the taking of the strip of ground, but from the use of the street as a roadway.

The abutters on the other side of the alley will suffer from similar disturbance and discomfort, and also the residents on Lake street in lesser degree. We cannot concur in the proposition that municipalities are liable in damages for discomfort, disturbance, and inconvenience that may result from public traffic on their highways.

[2] The verdict of the jury of freeholders in an expropriation suit as to the proper damages sustained by the defendant is entitled to great consideration, and will not be disturbed unless manifestly erroneous.

Judgments affirmed; costs of appeal to be paid one half by plaintiff, and the other half by the defendants.

## On Rehearing.

SOMMERVILLE, J. In the decree formerly handed down in this case we took into consideration the judgment rendered in the district court in the case of City of Shreve-

port v. S. N. Kerley, and predicated our judgment upon the amount found by the jury to be due to Mr. Kerley on his property and, as we thought, had been acquiesced in by the city of Shreveport. Our attention is now called to an admission made in this case, where the evidence only in the Kerley case was filed with the transcript in this case, for the purpose of considering that evidence as a part of this case. The judgment in the Kerley case was therefore not before us, and we are informed now that it was not executed, and that the city of Shreveport made other arrangements with Mr. Kerley.

In reviewing the evidence in the several cases we find that the lots in question were valued at about $4,000 each, and that a strip of 10 feet in width cut off the rear of one of said lots would be worth about $266; but the evidence is that such strip would be worth about $300. And, as the rear fences must be moved, in some instances sheds and a chicken house, and as the property may be injured to a limited extent because of the taking of said piece off the rear of the lots, we are of the opinion that defendants are entitled to judgments in the following amounts. The verdicts of the jury and the judgments predicated thereon were excessive, and evidently based upon evidence improperly admitted on the trial, as indicated in our former opinion; and they will be reduced.

It is therefore ordered, adjudged, and decreed that the judgments appealed from be amended in the following respects: The judgment in favor of Mrs. Kate J. Pickett be reduced to $700; that the judgment in favor of Z. R. Lawhon be reduced to $360; that the judgment in favor of Noah W. McClure be reduced to $320; that the judgment in favor of Mrs. Sarah F. Martin et al. be reduced to $800; and that the judgment in favor of Mrs. M. C. Leonard Ellerbe be reduced to $800; and, as thus amended, the judgments appealed from are affirmed. Costs of appeal to be paid by defendants.

LAND, J. I deem the awards by this court insufficient, and therefore dissent.