**(115 So. 650)**

**No. 28589.**

**HULIN et al. v. ROAD DIST. NO. 4, PARISH OF VERMILION.**

Nov. 28, 1927.   Rehearing Denied Feb. 13, 1928.

*(Syllabus by Editorial Staff.)*

1. **Highways** ⊂⇒136—Principle of equal distribution of taxation in proportion of benefits received has no application to road district tax.

    Principle that burden of taxation must be distributed in equal proportion to benefits received has no application to imposition of a road district tax for purpose of building, maintaining, and improving roads of district.

2. **Highways** ⊂⇒90—Police jury had authority to establish and define boundary of road district.

    Police jury *held* to have authority to establish road district within parish and to define its boundaries.

3. **Highways** ⊂⇒99—Construction and repair of public highways is "governmental function," and roads are laid out and constructed for public in general.

    Construction and repair of public roads and highways is a "governmental function," and roads are laid out and constructed, not for any special or particular benefit to lands within the district, but for the benefit of the public in general.

    [Ed. Note.—For other definitions, see Words and Phrases, Second Series, Governmental Function.]

4. **Constitutional law** ⊂⇒284(1)—Highways ⊂⇒90—Police jury did not abuse discretion in including marsh lands in road district, and ad valorem tax levied thereon was not unconstitutional (Const. La. art. 1, § 2; Const. U. S. Amend. 14).

    Police jury in including marsh lands in road district, which lands would obtain appreciable benefit from construction even though roads were laid out in high lands, *held* not to have abused discretion, and hence ad valorem tax levied on lands in district did not contravene due process clauses of Const. La. art. 1, § 2, and Const. U. S. Amend. 14.

O'Niell, C. J., and Overton and Land, JJ., dissenting.

Appeal from Fifteenth Judicial District Court, Parish of Vermilion; W. W. Bailey, Judge.

Suit by Laodice Hulin and others against Road District No. 4, Parish of Vermilion. Judgment for defendant, and plaintiffs appeal. Affirmed.

J. E. Kibbe, Jr., of Abbeville, and Donelson Caffery, of New Orleans, for appellants.

Preston J. Greene, Asst. Dist. Atty., and W. P. Edwards and Broussard & Samson, all of Abbeville, for appellee.

THOMPSON, J. This case comes up on an agreed statement of facts, and the legal question to be decided, as stated in the beginning of the brief of counsel for plaintiffs, is whether the imposition of an ad valorem tax for road purposes on the lands of plaintiffs situated within the road district created by the police jury constitutes a taking of plaintiffs' property without due process of law, in violation of the state and Federal Constitutions. Const. La. art. 1, § 2, and Const. U. S. Amend. 14.

The police jury of the parish of Vermilion, about 1918, subdivided the parish into nine road districts, corresponding in territory and boundaries with the nine wards of the parish, the second ward of the parish being designated as road district No. 2.

There was no indebtedness incurred by or in behalf of the district No. 2, and the ordinance creating it was repealed.

In January, 1926, the police jury created road district No. 4, including therein the whole of the territory of the second ward of the parish, but the district took no action towards road building and incurred no debt for that purpose, and the road district, as thus defined, was abolished on May 5, 1926.

Thereafter, road district No. 4 was re-created or reorganized, composed of the territory of ward 2, except about 5,000 acres located in the northeastern portion of said ward.

Some time in July, 1926, an election was held in said district on the proposition of issuing bonds for the purpose of acquiring, building, improving, hardsurfacing, and maintaining the public roads and bridges in said district No. 4 and on the question of whether a special tax of three mills should be levied for a period of three years, beginning with 1926, the avails of which tax to be used for maintaining and improving the roads of said district.

Both propositions were carried by a majority vote in numbers and amount of assessed property, and the result was duly promulgated.

No opposition appears to have been made to the creation of the district, nor to the election on the bond issue and the tax levy, and the regularity and legality thereof are not now questioned, except in so far as immunity or exemption from the tax levy is claimed in the present suit.

It appears that ward No. 2 embraces 25,907 acres of high lands and 36,451 acres of marsh land.

In re-establishing road district No. 4, there were excluded from the district 4,262 acres of high land of ward 2 and 800 acres of marsh.

The assessment of high lands, with improvements included in road district No. 4, is $449,945.

The assessment of marsh lands in said district is $141,155. The assessment of all other property in said district is $80,416.

The high lands are situated in the northern part of the district, and the marsh lands in the southern part. There are no streams or natural monuments which separate the high lands from the marsh, but there is a natural and gradual slope of the high lands into the marsh territory.

There are, at present, no roads reaching to the marsh lands, but there are several public (dirt) roads crossing the high lands of said road district from east to west, all connecting with a proposed gravel road of the district which connects with a gravel road leading to Abbeville, the parish seat of Vermilion.

There are also several public roads in the high lands of the road district which run north and south, commencing from within one mile of the marsh lands and running north and connecting with proposed gravel road or district which connects with first ward graveled road at the limits of the corporation of Erath, which is on a state highway.

The fifteen plaintiffs own some 6,338 acres of marsh land situated in said road district,

having an assessed value of $21,815; on which the tax for 1926 on the bond issue would amount to $174.52, and for the three-mill maintenance tax, $65.44.

The tax on the high lands of the district for the bond issue will amount to $3,599.56, and for the maintenance of roads, $1,349.83 per year.

The assessed value of the high land of ward 2 (4,266 acres), not including said road district, is $117,600, which would yield for the year for the bond issue, $940.80, and for the maintenance of the roads, $352.80.

There are no residences or buildings on the marsh lands of the road district, but there are some twelve or more pleasure camps located at or near the end of a drainage canal which runs into Vermilion Bay, and there are camps used by trappers during the trapping season scattered over the marsh area.

It is admitted that the camps at the end of the canal are occupied the year round, being used during the summer for pleasure and recreation, and during the winter months by people trapping, hunting, and fishing.

Two of the camps are worth $1,500 each; and the others, about $125 each.

The only revenues derived from the marsh land are trapping and grazing of live stock.

The revenue from trapping on the best marsh lands in the best year does not exceed $2 per acre per year, and the average revenue from trapping on the marsh land of the district, since trapping began five years ago, has been 80 cents per acre per year.

The stock grazing is not on a rental basis, but the owners of the marsh lands graze their own cattle thereon. On an average, year after year, about one-half or two-thirds of the marsh is subject to grazing during five or six months out of the year, including the winter months.

During the shrimp season, five or six men engage in seining and drying shrimp for sale at their camp located at the mouth of the drainage canal on Vermilion Bay, and this is about the only commercial fishing which passes over the marsh lands or through the canal.

The owner of a camp at the end of the drainage canal on Vermilion Bay, during the summer months, runs a boat up and down the canal, carrying passengers from the high lands to the camp, there being on an average of 70 or 80 passengers per week. The operator of the transfer boat pays the landowner rent for the camp at the rate of $75 per year.

Two of the plaintiffs own land adjoining the proposed gravel road to be constructed in said road district with the funds derived from the bond issue and to be maintained by the three-mill tax, and all of the other plaintiffs own land situated from a quarter to one mile distant from the proposed gravel road.

It is alleged in plaintiffs' petition that the reorganization of the road district No. 4, and the exclusion therefrom of the 4,266 acres of high land in ward 2, was brought about by reason of the opposition of the owners of said high lands and the threatened defeat of any bond issue or tax levy in the district as originally created.

It is because of this exclusion of high land acreage that the plaintiffs argue in their brief that the action of the police jury "becomes unconscionable, and takes on the air and substance of fraud."

There is not a word of testimony in the record to support the charge of fraud against the police jury, unless it be a legal fraud to so constitute a road district as to leave out some property owners who would receive a greater benefit from the roads to be constructed than some of the property owners who are included in the district.

It may be, and doubtless was, the purpose of the police jury to create a district with some degree of certainty of obtaining the consent of a majority of the property owners to

a bond issue and tax levy for the building and maintenance of public roads, but we are not prepared to say that if the police jury acted from such a motive its action was arbitrary, improper, or fraudulent.

It is certainly not to be presumed that the police jury would create a road district with full knowledge in advance that the property owners therein would defeat, by their votes, any proposition for a bond issue or tax levy for road purposes.

It appears to us that the plaintiffs' complaint, if any they have, is not so much as to the exclusion of a small area of high lands which would be benefited by the road construction, but the improper inclusion of their own lands which would receive but little benefit from the proposed road construction.

We have referred to the location and situation of the marsh lands in the district as compared with the high lands, at length and somewhat in detail because of the insistence of the plaintiffs that the marsh lands do not now, and never will, enjoy any benefits from the proposed construction.

There ought to be no doubt, however, in the minds of any one from the facts related that the marsh lands will obtain some very appreciable benefit from the road construction, even though the roads to be constructed are laid out in the high lands and not in the marsh.

The owners of the marsh lands must necessarily have occasion to visit them, to graze their cattle on them, and to lease them out for trapping purposes.

In order to utilize the marsh lands for the purposes stated, the owners must have access to and the use of the public roads of the district.

It is not improbable that ultimately all of the marsh lands in the road district may be connected up with the high lands by a system of public roads.

165 LA.—15

[1] But the case is not to be decided upon the general principle that the burden of taxation must be distributed in equal proportion with the benefits received. That principle can find no application to the imposition of a road district tax any more than it can be applied to a tax levied for the support of the state or parochial government.

All of the cases cited by counsel for plaintiffs refer to taxes imposed for drainage purposes.

Thus in Shaw v. Bayou Terre-Aux-Bœuf's Drainage District, 138 La. 918, 70 So. 910, 911, on the original hearing the court maintained the tax levy on the theory:

"That the creation of a drainage district is a legislative, and not a judicial, function, and that the courts will not readily substitute their judgments for the judgments of drainage commissioners, upon complaints that particular property is not benefited, or is not immediately or directly benefited, save in cases where fraud or gross oppression is alleged and proved."

On rehearing, however, the collection of the tax was denied on the principle, quoting from the syllabus

That "a drainage district has a special purpose of the improvement of particular property, and when it is so formed to include property which is not and cannot be benefited directly or indirectly, including it only that it may pay for the benefit to other property, there is an abuse of power and an act of confiscation."

It was upon the same principle that the tax levy was denied in Bomer-Blanks Lbr. Co. v. Bouanchaud, 156 La. 598, 100 So. 731, and in Myles Salt Co. v. Board of Commissioners of Iberia and St. Mary Drainage District, 239 U. S. 478, 36 S. Ct. 204, 60 L. Ed. 392.

In the last-mentioned case the court said:

"It is to be remembered that a drainage district has the special purpose of the improvement of particular property and when it is so formed to include property which is not and cannot be benefited directly or indirectly, including it only that it may pay for the benefit to other property, there is an abuse of power and an act of confiscation."

But even in the matters of drainage taxation, the Supreme Court of the United States in Miller v. Sacramento and San Joaquin Drainage District, 256 U. S. 130, 41 S. Ct. 405, 65 L. Ed. 863, said:

"The doctrine has been definitely settled that in the absence of flagrant abuse or purely arbitrary action a state may establish drainage districts and tax lands therein for local improvements, and that none of such lands may escape liability solely because they will not receive direct benefits."

[2, 3] It is conceded that the police jury had the authority to establish the road district and to define its boundaries. And it is likewise conceded that the construction and repair of public roads and highways is a governmental function, and that roads are laid out and constructed, not for any special or particular benefit to the lands within the district, but for the benefit of the public in general.

29 Corpus Juris, 584, declares:

"The power to impose taxes for highway purposes, the power to determine the character and location of the property that shall be subject to taxation, and the distribution or apportionment of the taxes when collected, is vested in the Legislature, which may delegate such power to municipal corporations, or to districts specially created for that purpose."

In Williams Cypress Co. v. Martin, Sheriff, 144 La. 767, 81 So. 307, the plaintiff, as is the case with the plaintiffs here, instituted a suit to annul a road tax because the lands of plaintiff had been illegally included within the road district and illegally subjected to the tax for the purpose of constructing or maintaining roads in the district.

The theory in that case, as in the present one, was that the tax in question was a local assessment, to sustain the validity of which it must be shown that the property taxed will be specifically and proportionately benefited.

The court held, quoting from the syllabus:

"Where, by proceedings, the legality of which is not questioned, the consent of the property tax payers * * * has been obtained to the levy of * * * an ad valorem tax * * * upon all the land subject to taxation * * * for the construction and maintenance of public roads and highways * * * such tax cannot be confused with a local assessment the validity of which, as to particular land, may depend upon the benefit to be derived therefrom by such land, but is to be regarded as a tax levied for the benefit and general welfare of the parish [here the district], to which all the taxable property in the parish [road district] may lawfully be subjected, without regard to benefits, positive or relative, conferred or not conferred, upon lands of particular persons."

In that case the lands were swamp lands, unfit for cultivation. They were separated from the agricultural lands and were accessible only by streams or lakes. It was contended that no system of roads had ever been, or could be, constructed through them, save at an expense out of proportion to all values or benefits to be derived therefrom.

That was obviously a much stronger case for the exemption of the lands from road taxation than the instant case.

In the present case, the marsh lands are not separated from the high lands, and they can be reached by a public road system, and not altogether by streams or lakes.

We may very appropriately repeat here what was said in application for rehearing in the Williams Case:

"If it be that their lands are such that roads cannot be built thereon, or if the police jury in the exercise of a reasonable discretion does not see fit to construct same thereon, then that is a situation which they accepted and should have foreseen when voluntarily selecting the property for purchase. If only those to be directly benefited could be taxed for road building, then every one whose property was not touched by or rendered more accessible by the building of roads would, to that extent, have a similar complaint, in that the benefits were not uniform. The result would be to nullify the admittedly wise provisions for public road building."

[4] Our conclusion is that the police jury, in including plaintiffs' lands in road district

No. 4 of Vermilion, did not abuse the discretion and authority vested in it by law and did not act arbitrarily. The ad valorem tax levied on all the lands in the district does not contravene any of the provisions of the state or Federal Constitutions. The judgment appealed from is therefore affirmed.

O'NIELL, C. J., and OVERTON and LAND, JJ., dissent.