LAND, J.
 

 Acting under the provisions of Act 46, Extra Session of 1921, the mayor and board of aldermen of the village of Scott adopted on June 1, 1926, an ordinance calling a special election to be held on July 20, 1926, for the purpose of determining the question as to whether the village should incur debt and issue bonds in the amount of $10,000, to run for a period of 15 years, for paving and improving the sidewalks in that village.
 

 After due proclamation, the special election was held, and resulted in favor of the proposition, and the result was promulgated by the municipal authorities.
 

 Before an ordinance was adopted levying the tax and prescribing the time and manner of issuing the bonds, plaintiffs filed the present suits, and attacked, on various grounds, all of the proceedings leading up to the levying of the tax and the issuance of the bonds, as well as the proposed tax and bonds, and applied for an injunction restraining the village of Scott from issuing, or attempting to issue, sell, or negotiate the bonds, or from levying, or attempting to levy, the proposed tax.
 

 
 *116
 
 The above cases were consolidated for trial in the lower court, and a separate judgment was rendered in each in favor of defendant, village of Scott, rejecting plaintiffs’ demands.
 

 The two cases are also consolidated for the purposes of appeal and hearing on appeal in this court.
 

 Plaintiffs -have appealed in each case from the judgment rejecting their respective demands.
 

 In one of these suits the plaintiffs are Louis Leo Judice and Mrs. Alcide Judice, widow of Alcide Judice, residents and taxpayers of the village of Scott. In the other suit the plaintiffs are the Judice Company, Inc., and the Louisiana Western Railroad Company, both Louisiana corporations, domiciled respectively in the parishes of Lafayette and Orleans, and owners of property within that village.
 

 1. Plaintiffs contend that the proposed tax, bonds, and expenditure for such purpose are in contravention of article 14, § 14 of the Constitution of Louisiana, and are therefore null and void, and that Act 46, Extra Session of 1921, under which the special election was held, is in conflict with the same article and section of the Constitution, and particularly so because the act purports to authorize the levying of taxes and the issuance of bonds for the purpose of paving sidewalks in municipalities. The unconst'itutionality of the act would vitiate, necessarily, all proceedings had thereunder by the municipal authorities of the village of Scqtt for paving and improving the sidewalks of that village.
 

 Article 14, § 14 (a) of the state Constitution •of 1921, provides that: “Municipal corporations, parishes and school, road, sub-road, sewerage, drainage and sub-drainage districts, hereinafter referred to as subdivisions •of the State,, may incur debt and issue negotiable bonds, when ' authorized by vote of a majority, in number and p.mount, of the property taxpayers qualified to vote under the Constitution and laws of this State, who vote at an election held for that purpose after notice published or posted for thirty (30) days in such manner as the Legislature may prescribe, and the governing authorities of such subdivisions shall impose and col-. Iect annually, in excess of all other taxes, a tax sufficient to pay the interest annually or semiannually and the principal falling due each year, or such amount as may be required for any sinking fund necessary to retire said bonds at maturity.”
 

 It is also provided in article .14, § 14 (b) of the state Constitution of 1921, that: “Except as otherwise herein expressly provided, no bonds shall be issued by any parish for any purpose other than for constructing and maintaining public roads, highways and bridges, constructing courthouses, jails, hospitals and other public buildings, and other works of public improvement, together with the necessary equipment and furnishings therefor, title to which shall be in the public, and for such other public purposes as the Legislature may authorize;
 
 nor by atvy mumcipal corporation
 
 for any. purpose other than opening, constructing, paving and improving streets, roads and alleys, constructing bridges, purchasing • or constructing waterworks, sewers, drains, lighting and power plants, artificial ice and refrigeration plants, public parks, school houses, teachers’ homes,
 
 and other public buildings, and works of public improvement,
 
 together with all necessary equipment and furnishings therefor, title to which shall be in the public,
 
 and for such other public purposes as the Legislature may authorize.’’
 
 (Italics ours.)
 

 It is clear from the above provisions that debt may be incurred and negotiable bonds issued, and that
 
 a general ad valorem taw
 
 
 *118
 
 may be levied to pay tbe indebtedness contracted in making the public improvements •enumerated in article 14, § 14 (b).
 

 It is also evident from these provisions ■that the Legislature of the state may add ■other works of public improvement to the list contained in article 14, § 14 (b) of the Constitution, as it is expressly provided that debt may be incurred and negotiable bonds issued by municipal corporations for “other public buildings, and other works of public improvement,” and “for such other public purposes as the Legislature may authorize.”
 

 Acting under this constitutional authority, the Legislature in the year 1921 enacted Act 46 to carry into effect article 14, § 14 (a) and (b), and included “sidewalks” in section 7 of that act as a public improvement, in addition to “streets, roads and alleys,” expressly provided for in article 14, § 14 (b) of the original article of the state Constitution of 1921.
 

 The contention of plaintiffs that Act 46, Extra Session of 1921, violates article 14, § 14 (b) of the Constitution, because section 7 of the act includes, as a public improvement “sidewalks,” which are omitted in article 14, § 14 (b) is therefore without merit.
 

 2. Plaintiffs contend also that the paving of sidewalks in a village is not “a public purpose” within the intendment of the Constitution, as is shown by various acts of the state. Act 147 of 1002; 210 of 1914; 27 of 1915; 79 of 1S96.
 

 It is difficult to understand how these various acts, which provide for the improvement of sidewalks by special assessment, or how a similar provision in Act 136 of 189S (section 15, par. 19), under which the village of Scott is incorporated, can be read into the Constitution of 1921, adopted years later, and can in any way control its intendment as to article 14, § 14 (a). Especially -is this the case, as this particular section does not provide for a special assessment, but for a general ad valorem tax, for the payment of debt incurred and bonds issued by all the municipal corporations of the state for the public improvements enumerated in section 14 (b), as well as for those which may be added in the future by legislative authority. As “sidewalks” have been legally added, by section 7 of Act 46, Extra Session of 1921, to the list of public improvements mentioned in article 14, § 14 (b), there can be no serious question but that “sidewalks” may be paved and improved likewise by the levy of a general ad valorem tax.
 

 Act 136 of 1898, known as the Lawrason Act, is entitled as an act “for the creation and government of municipal corporations throughout the State and defining their powers and duties and providing for the extension or contraction of their limits.”
 

 Section 1 of this act declares: “That municipal corporations are divided into three classes, viz: cities, towns and villages ; those having five thousand inhabitants or more are cities; those having less than five thousand and more than one thousand inhabitants are towns; and those having less than one thousand and more than two hundred and fifty inhabitants are villages. A municipal corporation shall not be created with less than two hundred and fifty inhabitants.”
 

 It is clear, therefore, that the term, “municipal corporations,” as used in article 14, § 14 (a) and (b) of the present Constitution, includes a village, as well as a town or city. Had the framers of the Constitution of 1921 intended to exclude from that article (and these sections) towns and villages as municipal corporations, they would have employed the specific term “cities,” and not the generic term “municipal corporations,” which includes, under our law, cities, towns, and villages alike.’
 

 3. The village of Scott has not yet levied the tax in controversy. It is assumed, however, upon the face of the assessment of property within the limits of the village, that
 
 *120
 
 a tax of five mills will be required to pay the principal and interest of the proposed bond issue to pave and improve the sidewalks contemplated.
 

 The tax which must be imposed and collected annually, to pay the principal and interest of bonded indebtedness incurred for public improvements under section 14 (a) of article 14 of the present Constitution, is not designated in that section, or elsewhere, as a “special tax,” or “local assessment.” Section 12 of article 14 declares that: “Except
 
 as otherwise provided
 
 in this Constitution, no municipal tax, for all purposes whatsoever, shall exceed, in any one year, seven mills on the dollar of assessed valuation.”
 

 It is expressly ' provided in article 14, § 14 (a), that municipal corporations, as the governing authorities, “shall impose and collect annually,
 
 m excess of all other taxes,
 
 a tax sufficient to pay the interest annually or semiannually and the principal falling due each year, or such amount as may be required for any sinking fund necessary to . retire said bonds at maturity.”
 

 The tax in question may therefore validly exceed the general municipal tax of seven mills. It is not a special tax levied purely for local assessment and benefit, but an ordinary additional tax, over and above the general alimony tax for municipal corporations, authorized by the Constitution.
 

 (The tax in question is to be levied uniformly upon all taxable property within the limits of the taxing authority and collected in the same manner as other taxes. The constitutional requirement of uniformity is therefore complied with under the proposed tax' attacked by the plaintiffs in this case. Const. 1921, art. 10, § 1.
 

 In Charnock v. Levee District Co., 38 La. Ann. 327, the court said that local assessments were not to be confounded with ordinary local taxation, citing Burroughs, Taxation, p. 460, as follows: “A tax for the local purposes of a county is imposed on the persons or property within the county, as distinguished from other parts of the state,-but it is usually imposed on all the subjects on which the state imposes a tax for state purposes. In local assessments, on the contrary, the tax is imposed on the real estate alone and only on such real estate as is benefited by the local improvement. * * * The benefit of the improvement is not only-local but also specific, benefiting particularized property, and therefore the tax may be levied on this property which receives a benefit.”
 

 In Construction Co. v. Tax Collector et al., 108 La. 435, 32 So. 399, 58 L. R. A. 349, it is said: “The essentially characteristic feature of a local assessment is that it is levied on particularized property, and not on property generally. Charnock v. Levee Dist. Co., 38 La. Ann. 327. * * * That the tax should be levied on each particular property in proportion to the benefit it is to derive * * * from the expenditure of the avails of the tax.”
 

 In Louisiana & A. Ry. Co. v. Shaw, 121 La. 1001, 46 So. 995, the court said that: “Local assessments are a peculiar species of taxation based on the assumption that a portion of the community is to be specially and peculiarly benefited in the enhancement of the value of property peculiarly situated as regards a contemplated expenditure of public funds. A local assessment can be only levied on land, and cannot be made a personal liability, as it is an assessment on the thing supposed to be benefited. It cannot be levied on a whole political subdivision, as a county or town, but must be restricted to property situated in a district created for the express purpose of the levy, and possessing no other function or even existence. Cooley on Taxation (3d Ed.) 1154 et seq.”
 

 It is clear, therefore, that the tax attacked in this case does not possess in any particular the indicia of a local assessment, but, on the
 
 *122
 
 contrary, is an additional ordinary tax for public improvements, to be levied generally on all taxable property within the limits of a municipality.
 

 “The major part of the cost of a local work is sometimes collected by a general tax, while a smaller portion is levied upon the estates specially benefited.
 

 “The major part is sometimes assessed on estates benefited, while the general public is taxed a smaller portion in consideration of a smaller participation in the benefits.
 

 “The whole cost in othe» eases is levied on lands in the immediate vicinity of the work.
 

 “In a constitutional point of view either of these methods is admissible and one may be sometimes just, and another at other times. In other cases it may be deemed reasonable to make the whole cost a general charge, and levy no special assessment whatever. The question is legislative, and like all legislative questions, may be decided erroneously; but it is reasonable to expect that, with such latitude of choice, the tax will be more just and equal than it would be were the legislature required to levy it by one inflexible and arbitrary rule.” Cooley on Taxation, 447, c. 20 (5); Id. (2d Ed.) 637(5). See, also, Dillon Municipal Corporations (4th Ed.) 752; McQuillin, vol. 4, par. 1863.
 

 It is therefore apparent that the method of taxation by special assessment is not exclusive of the method by general tax.
 

 4. It is also contended by plaintiffs on this branch of the case that sidewalks cannot be “paved and improved” by the village of Scott, for the reason that the proposition submitted to the electors “to pave and improve sidewalks” is too vague, and cannot be strictly construed as a proposition “to lay out, construct, pave and improve,” as provided in article 14, § 14 (b) of the Constitution.
 

 It is further contended by plaintiffs that “sidewalks” cannot be “paved and improved” by the village of Scott, because they do not exist within the intendment of the law, or if existent, title to them is not in the public but in the adjacent property owners, and the expenditure will not be on public property.
 

 In answer to the first contention, municipal corporations are authorized by article 14, § 14 (a) and (b), to incur debt and issue bonds for the purpose of “opening, constructing,
 
 paving and improving
 
 streets, roads and alleys,” to which “sidewalks” have been added by section 7 of Act 46, Extra Session of 1921.
 

 In Redersheimer v. Bruning, 113 La. 343, 36 So. 990, it is held that “it is well settled that authority ‘to pave’ includes authority to ‘grade, curb, and drain.’ Elliott on Roads and Streets (2d Ed.) § 461, p. 473; also, see section 579, pp. 604, 605; O’Leary v. Sloo, 7 La. Ann. 25; Burgess v. City, 21 La. Ann. 143; also, Lincoln St. Ry. Co. v. City of Lincoln [61 Neb. 109], 84 N. W. 802, 815; Schenley v. Commonwealth, 36 Pa. 29, 40, 46, 78 Am. Dec. 359; Dean v. Borchsenius, 30 Wis. 236, 243, 244; Williams v. City of Detroit, 2 Mich. 560, 571, 577, 579; State v. City Council of Elizabeth, 30 N. J. Law, 365; Dashiell v. Mayor and City Council of Baltimore, 45 Md. 615, 629, 630.”
 

 The proposal submitted to the electors for “the paving and improving” of sidewalks in the village of Scott follows the exact language of the Constitution, and is sufficiently definite under the authorities above cited.
 

 As to the second contention of plaintiffs that there are no public sidewalks in the village of Scott to be paved, it may be said that this conclusion is based upon the fact that no formal dedication of sidewalks has been made by the property owners to that village. However, this is not necessary.
 

 It is established jurisprudence in this state that: “No deed or act of conveyance is necessary to dedicate land or rights in immovable property to the public. Nor is any particular form necessary to the dedication of
 
 *124
 
 land to the public use. All that is required is assent of the owner of the land, and the fact that it is being used for the purposes intended.” Shreveport v. Walpole, 22 La. Ann. 526; Sheen v. Stothart, 29 La. Ann. 633; Baton Rouge v. Bird, 21 La. Ann. 244; Pickett v. Brown, 18 La. Ann. 560; N. O. & C. R. Co. v. Carrollton, 3 La. Ann. 282; Donaldson’s Heirs v. City of New Orleans, 166 La. 1059, 118 So. 134.
 

 The fear expressed by plaintiffs that some of the money arising from the bond issue will have to be expended by the village of Scott to acquire title to sidewalks is groundless. In the first place, the proposition was carried by a total of 34 votes with a property valuation of $66,420, and only two votes with a property valuation of $2,940 against it, as alleged by plaintiffs in their respective petitions.
 

 Besides this, it appears from the testimony of the mayor of the village of Scott that the village has sidewalks within the limit of some of the streets, and that the property owners in other parts of the village had left a space between the street lines and their property, which was used as sidewalks. The photo? graphs in the record show the location of some of the dirt sidewalks to which the may- or refers.
 

 It appears also, from the evidence, that the streets in the village have been used by tire public and have been worked and improved with gravel by the municipal authorities.
 

 Under this state of facts, the streets and sidewalks in question have been sufficiently dedicated to public use.
 

 5. “Streets are common property, to the use of which all the inhabitants of a city or other place, and even strangers, are entitled in common. Civ. Code, art. 458. In this state, abutting proprietors are not recognized as having a fee in the sidewalks or streets in front of their estates. Irwin v. Telephone Co., 37 La. Ann. 67.” Louisville & N. R. Co. v. New Orleans Terminal Co., 120 La. 983, 45 So. 963. See, also, City of Shreveport v. McClure, 132 La. 468, 61 So. 530, and In re City of New Orleans, 138 La. 243, 70 So. 212.
 

 It follows, necessarily, that the title to sidewalks and streets in the village of Scott is “in the public,” in the sense used in article 14, § 14(b) of the Constitution of 1921.
 

 6. If the village of Scott were proceeding in this ease to construct sidewalks, and levy and collect taxes under its charter by special assessment for the payment of same, plaintiffs might well complain, if they should be taxed without special and peculiar benefit to-their property.
 

 However, under the taxing power delegated by the state to municipalities by article-14 (section 14a) of the present Constitution, the benefit to be received from such public improvements as sidewalks necessarily flows-from their common use. It would be difficult to conceive of the possibility of expending $10,000 for sidewalks in a village of 400 inhabitants, like that of Scott, without such general benefit resulting to the municipality and the public as is contemplated by article-14, § 14 (a) and (b) of the present Constitution.
 

 To hold that public streets or sidewalks cannot be constructed in a small town or village, unless laid in front of the property of. every taxpayer, would make a dead letter of article 14, § 14(a) and (b) of the present Constitution.
 

 As stated on rehearing in F. B. Williams Cypress Co. v. Martin, 144 La. 780, 81 So. 312: “If only those to be directly benefited could be taxed for road building, then every one whose property was not touched by or rendered more' accessible by the building of roads would, to that extent, have a similar complaint, in that the benefits were not uniform. The result would be to nullify the admittedly wise provisions for public road building.”
 

 In Hulin v. Road District No. 4, 165 La.
 
 *126
 
 443, 115 So. 650, it is held that the principle that the burden of taxation must be distributed in equal proportion to benefits received has no application to the imposition of a road district tax for the purpose of building, maintaining, and improving the roads of the district.
 

 In Myles Salt Co. v. Board of Commissioners of Iberia & St. Mary Drainage District, 239 U. S. 478, 36 S. Ct. 204, 60 L. Ed. 392, the court said: “It is to be remembered that a drainage district has the special purpose of the improvement of particular property and when it is so formed to include property which is not and cannot be benefited directly or indirectly, including it only that it may pay for the benefit to other property, there is an abuse of power and an act of confiscation.”
 

 This case, however, found its way to the Supreme Court of the United States, upon an exception of no cause of action to a petition that alleged that the tax levied was for the sole purpose of raising revenue to drain certain lands, not including plaintiffs’ (which was 175 feet above sea level as against 15 feet for the surrounding lands), and that-the only effect would be to benefit and improve the private property of the other parties, without any resultant benefit to plaintiff. The facts alleged are necessarily admitted to be true under the exception of no cause of action filed in that case.
 

 In a later case, Miller & Lux v. Sacramento
 
 &
 
 San Joaquin Drainage District, 256 U. S. 130, 41 S. Ct. 405, 65 L. Ed. 863, it is said: “The doctrine has been definitely settled that in the absence of flagrant abuse or purely arbitrary action a state may establish drainage districts and tax lands therein for local improvements, and that none of such lands may escape liability solely because they will not receive direct benefits.”
 

 The proposition adopted by a majority of the electors and taxpayers of the village of Scott, for paving and improving sidewalks in that village, does not evidence either flagrant abuse or purely arbitrary action, nor can article 14, § 14 (a) and (b), delegating the power to municipal corporations to levy additional taxes for public improvements, be justly subjected to such a charge.
 

 The primary object of this article of the present Constitution is not the special purpose of the improvement of particular property, nor the establishment of local assessment districts within the limits of the municipalities of the state.
 

 The tax to be levied under this article cannot be confused with a local assessment, but is to be regarded as a tax imposed for the benefit and general welfare of the parish, municipality, or district, to which all of the taxable property within its limits may be lawfully subjected, without regard to benefits, positive or relative, conferred or not conferred, upon lands of particular' persons. Williams Cypress Co. v. Martin, Sheriff, 144 La. 767, 81 So. 307; Hulin v. Road Dist. No. 4, 165 La. 443, 115 So. 650.
 

 7. Adequate notice to the taxpayers of the special election to be held is provided for in Act 46, Extra Session of 1921, and the right to contest the validity of the tax is amply afforded and secured by its provisions. Sections 5 and 43. Plaintiffs have availed themselves of this right in the present case.
 

 8. Plaintiffs, the Judice Company, Inc., and the Louisiana Western Railroad Company, complain that as corporations and property owners they are discriminated against, because not permitted by the Constitution and laws of the state to vote at special elections held to incur debt and issue bonds for public improvements.
 

 It is provided both in article 14, § 14(a) of the present Constitution, and in section 3 of Act 46, Extra Session of 1921, that no bonds shall be issued thereunder until they shall have been authorized by vote of a majority in number and in amount of the property tax
 
 *127
 
 páyers, qualified to vote under the Constitution and laws of this state, who vote at an election held thereunder.
 

 Corporations, as a class, are excluded from these provisions. Conceding that corporations are considered citizens for certain legal purposes, yet the right of suffrage is not a privilege or immunity that a citizen of one state may require of any state to which he may remove. Van Valkenbcrg v. Brown, 43 Cal. 43,13 Am. Rep. 136.
 

 The Fourteenth Amendment did not add the right of suffrage to the privileges and immunities of citizenship, nor is it a right of property or of person. United States v. Cruikshank, 92 U. S. 542, 23 L. Ed. 588; Spencer v. Board of Registration, 8 D. C. (1 MacArthur) 169, 29 Am. Rep. 582; Kinneen v. Wells, 144 Mass. 497, 11 N. E. 916, 59 Am. Rep. 105; Bloomer v. Todd, 3 Wash. T. 599, 19 P.
 
 135, 1
 
 L. R. A. 111, and note.
 

 “The Fifteenth Amendment does not affect the power of the states to confer or withhold the right of suffrage, in such manner as the people may deem best for their welfare, and upon such conditions or qualifications as they may see fit, subject only, however, to the limitation against discrimination on account of race, color or previous condition of servitude. It may therefore be stated that the right to vote comes from the states, but the right of exemption from political discrimination comes from the United States.” 9 R. C. L. “Elections,” p. 981, par. 5.
 

 The contention of plaintiffs is therefore without merit.
 

 Our conclusion is that the ad valorem tax authorized by the taxpayers of the village of Scott for paving and improving sidewalks does not contravene any of the provisions of the state Constitution or of the Federal Constitution, and is therefore constitutional and valid.
 

 Judgments affirmed.
 

 O’NIELL, C. J., concurs in the decree.