THOMPSON, J.
 

 The police jury of the parish of Tangipahoa, on the petition of certain property owners, created and provided for the organization of a drainage district styled “Gravity Drainage District No. 3,” composed of lands wholly situated in the said parish. The district is about six miles in length extending north and south, its southern boundary being Gravity drainage district No. 1.
 

 Immediately following the ordinance creating the district, a proposition was submitted to the property owners to incur debt and to issue bonds in the sum of $150,000 to run 30 years, the proceeds of the bonds to be used in the construction of a system of drainage for the district. The election, it appears, was held after this suit was filed and went in favor of the bond issue.
 

 The plaintiffs, some 92 in number owning property in the district, filed this suit within the 30 days following the creation of the district, and its object is to annul the ordi
 
 *520
 
 nance creating the district as well as all proceedings had thereunder.
 

 The cause of action is to be found in paragraphs 4 and 5 of plaintiffs’ petition, in which it is alleged in substance that the petitioners’ lands will receive no benefit whatever from the contemplated drainage district; that the lands of plaintiffs are not of that character which should be included in a drainage district, but are lands which drain naturally, especially the lands known as “Amite Loam.”
 

 That a large area of the lands of the district are hill lands, high, dry, and which drain naturally, and that a large portion of the lands lie in what is known as the Tangipahoa river swamp subject to frequent overflow, but when not overflowed, drain naturally into the said river.
 

 That the inclusion of plaintiffs’ lands in said district is not for the purpose of benefiting them, but for the sole, purpose of raising revenue to drain lands belonging to other persons located in what is known as the back swamp lying one-half mile west of the town of Amite City, which back swamp is practically the only land that could possibly be benefited by a drainage district.
 

 ■ That to include the lands of petitioners and other lands which could not be benefited would amount to confiscation.
 

 The answer admits that some portions of said land may be high and dry and that a portion of the lands are in Tangipahoa river swamp, but it is alleged that all of the lands will be benefited by the contemplated drainage.
 

 It is further alleged that while it may be true that some small portions of the property included in said district will not be directly benefited, the entire district and all the inhabitants thereof will be benefited by reason of the increased value of the land in the entire district, the increase in the percentage of cultivatable land, and the consequent increase in the population of the district, and by the betterment of the health conditions resulting from the drainage of the low and swamp lands therein and the consequent reduction in number of mosquitoes.
 

 It is shown by the evidence that the town of Amite City, which has its own drainage system, is included in the district, and it appears that there is a ridge or elevated area practically the entire length of the district between Tangipahoa river on the east and the swamp lands on the west, and that the natural drain from this ridge is east towards the river and west towards the swamp.
 

 The district embraces approximately 18,-500 acres, of which 10,000 acres or more lies in the back swamp and which by efficient and proper drainage could be brought into a state of cultivation. See testimony of Frieler engineer, Tr. p. 94.
 

 A fair preponderance of the testimony, it may be said, shows that the greater portion of the land in the district will receive no special benefit from the creation and maintenance of the district as constituted, but only such indirect benefit as may accrue generally to the inhabitants of the district by reason of the reclamation of a large body of swamp land and bringing it into a state of cultivation.
 

 Indeed, it is upon the theory of such general and indirect benefits that justification is found for including the greater portion of the high lands in the drainage district.
 

 In their brief counsel for defendants state that the district includes a large tra'ct of land known as the back swamp, and that if this swamp is drained and placed in cultivation there will necessarily be an increase in property values in the town of Amite City.
 

 
 *522
 
 Prom the facts stated and from the argument of counsel, it is not unfair to assume that the main purpose in- creating the district, and including the lands which would receive only such indirect community benefits as suggested, was to reclaim the swamp lands which, as stated by the engineer, Frieler, constitute more than half of the acreage of the district.
 

 We say this on the authority of defendants’ brief, from which we quote as follows: “Some of the plaintiffs are men in business in the town and they refuse to see that an increased population made possible by reclaiming the back swamp, will increase business in the town and thereby make their property more valuable.”
 

 In the case of Shaw v. Board of Commissioners of Bayou Terre-Aux Drainage District, 138 La. 917, 70 So. 910, it was held on rehearing that:
 

 “A drainage district has the special purpose of the improvement of particular property, and when it is so formed to include property which is not and cannot be benefited directly or indirectly, including it only that it may pay for the benefit to other property, there is an abuse of power and an act of confiscation.”
 

 In that ease the court quoted with approval from the Myles Salt Co. Case, 239 U. S. 478, 36 S. Ct. 204, 60 L. Ed. 392, as follows:
 

 “We are not dealing with motives alone but as well with their resultant action; we are not dealing with disputable grounds of discretion or disputable degrees of benefit, but with an exercise of power determined by considerations not of the improvement of plaintiff’s property but solely of the improvement of the property of others — power, therefore, arbitrarily exerted, imposing a burden without a compensating advantage of any kind.”
 

 It is to be observed that in the Shaw Case the lands of the plaintiff were low and marshy, and it was contended by the defendant that the lands would be enhanced in value with other property if incorporated in the distinct, but the court held that such a benefit was not a benefit to the lands.
 

 In the instant case the lands of the plaintiffs are placed in the district to be taxed for the purpose of draining and reclaiming the low swamp lands without any compensating benefit to the lands themselves, but only such problematical benefits as may result to the community in the general enhancement of values of all property, the increase in population, destruction of mosquitoes, and consequent improvement in sanitary and health conditions.
 

 It is further to be observed that in the Shaw Case thé drainage district under consideration was created at a time when no distinction was made in creating drainage districts between lands having a natural drainage and those which were required to be drained by artificial means.
 

 If therefore marsh or swamp lands could not be taxed for improvement of the drainage of other lands on the score of not being benefited, at a time when the law made no distinction in the character of lands that might be included in the district, for a much greater reason, under the presently existing law, should lands not classed as marsh or swamp be not included in a district formed for the purpose of reclaiming large bodies of swamp lands.
 

 Section 14, article 14, Constitution of 1921, provides that the Legislature may by general law authorize the police juries to create gravity drainage and subdrainage districts composed of territory either wholly within a parish or partly within two or more parishes.
 

 
 *524
 
 And section 1 of article 15 of the same Constitution, under the title of “Drainage Districts,” authorizes the Legislature to enact necessary legislation for the purpose of causing to be drained and reclaimed the undrained marsh, swamp, and overflowed lands, and for such purpose to delegate the power to such agent or agencies as may then exist or may be subsequently created and to impose taxes and forced contributions on land benefited by such drainage.
 

 At the Extra Session of the Legislature in 1921 (No. 85), an act was passed carrying into effect section 1, article 15, of the Constitution, in which the police juries were authorized to create drainage districts for the purpose of draining and reclaiming the undrained or partially drained marsh, swamp, and overflowed lands.
 

 In section 4 of that act it was provided that no drainage district should be created until the board of state engineers shall have first approved the formation of the district with respect to the body of land to be included in the district.
 

 It was further provided that if in the opinion of the state board of engineers it was necessary to include in said district any high lands for the purpose of reclaiming the body of unreclaimed lands, such inclusion should not invalidate the creation of such district or any proceeding taken in connection therewith, but such high lands shall be taxed only in such proportion, if any, as they shall be benefited by the -reclamation and drainage works constructed in said district.
 

 It is not pretended that the district under consideration was created under the act referred to, nor is it pretended that the inclusion of the high lands was approved by the state board of engineers. But if that were true there is no possible way by which the plaintiffs could be taxed in proportion to the benefits they received by reason of the reclamation of the swamp.
 

 It would be impossible to measure the amount of taxes the plaintiffs would be required to contribute on account of the claimed general enhancement of property values, improvement of health conditions, and destruction of mosquitoes.
 

 It is expressly declared in the ordinance, and the name of the district so indicates, that the district was created as a Gravity drainage district under Act 238 of 1924. That act empowers police juries to create from their respective parishes and from lands
 
 xvliioh drain Toy gravity,
 
 gravity drainage districts. (Italics by the writer.)
 

 It is provided in said act that within 30 days after the first publication of notice of the creation of a district any owner of property within the limits of said gravity drainage district shall have the right to contest the action of the police jury in including his land in the district, after which time, if no such contest is made, it shall be conclusively presumed that each and every acre of land is of the character of land that should be included in a Gravity drainage district, and the question of whether the lands are- such as should have been included, drain naturally or by gravity, or will be benefited by gravity drainage works, shall be forever closed.
 

 It is provided in section 43 of the act that drainage districts which had theretofore been organized, composed of both lands which drain naturally or by gravity, and marsh, swamp, and overflowed lands, which do not drain by gravity, cannot be reorganized under that act. It was provided, however, that subdrainage districts could be organized from such existing districts from those lands which drain naturally or by gravity.
 

 It was the manifest purpose 'of the Constitution of 1921 and of the acts of the Leg
 
 *526
 
 islature passed in pursuance thereof to establish two hinds of drainage districts, one in which those lands recognized as marsh, swamp, and overflowed lands only should be included, and the other to be formed of those lands having a natural or gravity drainage.
 

 It is impossible to conceive of any other purpose the convention could have had in view by authorizing in separate provisions the creation of different kind of drainage districts, the one to be composed of swamp territory and the other of lands subject to a natural drainage.
 

 It may be true that no drainage district can be created without taking in some lands which from their nature, character, and location would more properly belong to a different kind of drainage district and which would receive no particular benefit from the district in which they were placed.
 

 There is no legal justification, however, for bringing together and incorporating in one district, be it a gravity drainage district or a swamp reclamation district, large bodies of lands which from their nature and character belong to different districts as provided in the Constitution and the enabling acts thereunder.
 

 Where such is done it necessarily follows that one class of lands must bear, the burden of taxation for the benefit of the other class.
 

 That is the case here, for practically one-half of the district which might be properly incorporated in a separate gravity drainage district is to be taxed to reclaim the lands which properly belong to a district other than a gravity drainage district.
 

 We see no sufficient reason why the 10,000 acres of swamp land should not be embraced in one drainage district or a subdrainage district and bear the burden of taxation for its own drainage and reclamation. And the same is true with respect to the other part of the district. If in the wisdom and judgment of the police jury the lands classed as high lands and which drain naturally should be incorporated into a gravity drainage district, there appears no reason, in the light before us, why the same may not- be done.
 

 We are of the opinion that the two classes of lands cannot be brought together in one district and taxed without reference to the benefits received.
 

 It follows from what we have said that the district must be annulled as a whole.
 

 It cannot be annulled as to a part and maintained in part.
 

 The case of Hulin v. Road Dist., 165 La. 443, 115 So. 650, has no pertinent application to this case.
 

 In that case a large body of marsh lands was included in a road district along with a lot of high lands, and the contention was made that the marsh lands would not be benefited from the proposed roads. The court held that the principle that burden of taxation must be distributed in equal proportion to benefits received has no application to imposition of a road district tax for purpose of building and improving roads.
 

 It is true we reviewed some of the cases on the question of benefits or no benefits in matters of drainage districts, but that was done because of the fact that the drainage cases were cited and relied on by the plaintiff.
 

 It will be seen from the mere reading of the case that the decision was grounded on the principle that the question of benefits or want of benefits had no application to the imposition of a tax for construction and maintenance of public roads.
 

 
 *528
 
 For the reasons stated, the judgment appealed from Is reversed, and it is now ordered that 'the ordinance creating Gravity drainage district No. 3 of Tangipahoa parish, and all proceedings had thereunder, be annulled and set aside, and that defendants pay all-costs.
 

 O’NIELL, O. J., is of the opinion that the judgment of the district court should be affirmed.