80 So.2d 411

Malcolm D. JONES

v.

CITY OF LAKE CHARLES.

No. 42193.

April 25, 1955.

Herschel N. Knight, LeStage & Arnette, Jennings, for plaintiff-appellant.

George W. Liskow, Lake Charles, for defendant-appellee.

McCALEB, Justice.

Plaintiff, a taxpaying property owner in Lake Charles, seeks the annulment of a $1,600,000 bond issue voted by the qualified electors of the city at a special election held on July 20, 1954, pursuant to a call issued by the City Council under Resolution 60–54 adopted on July 16, 1954. The funds derived from the bonds are to be used to defray one-fourth of the costs of an expressway through the city, to be built under the supervision of the State Department of Highways.

The claim of nullity of the election is based on four grounds, two of which have reference to the asserted failure of the City Council to comply with the law in the publication of the resolution calling the election. All of plaintiff's charges were denied by the city and, after a trial in which the facts of the case were stipulated, the judge rejected the demand and dismissed the suit. Hence this appeal.

Plaintiff initially contends that the election is null because the Registrar of Voters failed to close the registration books within thirty days preceding the election, in direct violation of Section 16 of Article.8 of the Constitution. It is said by his counsel that this asserted dereliction voids the election despite the admitted fact

that the result would not have been changed if the votes of all those who registered after the deadline had been cast against the bond issue.[1]

The argument is untenable. The violation of Section 16 of Article 8 does not affect the validity of the election; it merely renders illegal the registration and vote of those persons who were registered within the thirty-day period next preceding the election.

The case of Langlois v. Lancaster, 217 La. 995, 47 So.2d 795, relied on by counsel, does not support their position. The election was held void in that matter because none of the participating voters were properly registered at the time of the election. Here, it was only a relative few whose votes could be challenged on the ground of illegal registration and elimination of those votes would not change the result. In such instance, the claim for annulment is unavailing. Blanchard v. Iberville Parish School Board, 218 La. 784, 51 So.2d 70 and Duncan v. Vernon Parish School Board, 226 La. 379, 76 So.2d 403.

The second contention is that the election is void because the polls opened at 7:00 a. m. and closed at 6:00 p. m., notwithstanding the requirement of R.S. 18:1181 that the opening and closing of polls shall be between the hours of 6:00 a. m. and 9:00 p. m.

There is no merit in the point. R.S. 18:1181, as last amended by Act 633 of 1954, is part of the Voting Machine Law, formerly Act 138 of 1942, now R.S. 18:1161 to 18:1196, which has application to primary and general elections but not to special elections, such as this, called by a parish or a municipality seeking approval of a proposition to issue bonds. See Peck v. City of New Orleans, 199 La. 76, 5 So.2d 508.[2]

This election was governed by R.S. 39:501 to 39:518, which sets forth the procedure to be followed by municipalities and other political subdivisions in holding elections for the purpose of incurring debt and issuing bonds under the authority granted them by Section 14(a) of Article 14 of

---

1. The record shows that 1,627 electors owning property valued at $4,191,182 voted for the bond issue and that 680 owning property valued at $1,064,435 voted against it. Between June 19, 1954, the claimed deadline for the closing of registration, and June 26, when the books were closed, 74 persons registered owning property having a total assessment of $82,675. Hence, even if all of them had voted against the issue (which was not the case since only 10 of them, representing an assessed valuation of less than $44,000, actually

voted), it would not have changed the result of the election.
2. Compare Woulfe v. Morrison, 212 La. 1032, 34 So.2d 251, where it was held that the use of voting machines in a special election for the issuance of bonds held in the City of New Orleans was proper by reason of the express provisions of Act 4 of 1916, under which that city is authorized to issue bonds without restriction upon its right to choose the medium for recording the vote cast in such election.

the Constitution. These provisions, particularly R.S. 39:513, prescribe that, on the day of the election, the polls shall open at 7:00 a. m. and remain open until and not later than 6:00 p. m. In the instant case, the City of Lake Charles properly followed this mandate.

■ The next complaint of plaintiff is that the City failed to publish notice of the resolution calling the election once in the official journal seven days before its adoption by the Council, as required by R.S. 33:552.

· This contention is without force for the reason that R.S. 33:552, which specifies in substance that every resolution appropriating money, or providing for street improvements, or authorizing the execution of any contract, or granting any franchise to occupy or use the streets in the municipality for any purpose, shall remain on file in final form for public inspection at least seven days before its adoption, has no application to resolutions calling a special municipal election for the purpose of considering a proposition to issue bonds. As we have stated above, the provisions pertinent to this case are those set forth by R.S. 39:501 to 39:578. R.S. 39:503, which was followed by the City Council of Lake Charles, provides that notice of the election shall be published four times, once a week, with at least 30 days intervening between the date of the first publication and the date of the election. This was the only essential as R.S. 39:578 declares that "No promulgation or publication of any resolution, ordinance, or proceeding, relating to the issuance of the bonds shall be necessary, except such as is required by this Sub-part".

■ Plaintiff also maintains that the notice calling the election, which was published by the City Council of Lake Charles, was deficient in that it did not contain information regarding the location of the proposed expressway.

The short answer to this proposition is that the law does not exact that the notice specify the location of the project. R.S. 39:502, which is applicable here, requires only that the resolution calling the election state, apart from the amount and terms of the debt, "the purpose for which the debt is to be incurred * * *". In the instant matter, the resolution stated that the debt was to be incurred to pay one-fourth of the cost of constructing an expressway through the city. This statement informed the electorate of the nature of the election and it was not necessary to identify the specific location of the roadway.[3]

■ Finally, plaintiff contends that Resolution 66–54, authorizing the Mayor of Lake Charles to enter into a contract with the State Department of Highways, and

3. Compare Judice v. Village of Scott, 168 La. 111, 121 So. 592.

the contract made pursuant thereto are invalid. But we do not consider that this question is before us as Resolution 66–54 and the contract between the City and the Department of Highways were not assailed by plaintiff in his pleadings and formed no part of the issues in the case. The reception of these documents in evidence did not effect an enlargement of the pleadings as they were admissible under the issues which had been tendered for decision. Althans v. Toye Bros. Yellow Cab Co., La. App., 191 So. 717, and Succession of Pujol v. Manning, 221 La. 466, 59 So.2d 456.

The judgment is affirmed.